SEVENTH URBAN, INC., APPELLEE, *v.* UNIVERSITY CIRCLE PROPERTY DEVELOPMENT, INC., APPELLANT.

[Cite as Seventh Urban, Inc., v. University Circle (1981), 67 Ohio St. 2d 19.]

(No. 80-1569—Decided July 1, 1981.)

*Messrs. Schulman & Schulman, Mr. Jack Schulman* and *Mr. Howard A. Schulman,* for appellee.

*Mr. James R. Willis* and *Mr. William Wuliger,* for appellant.

PAUL W. BROWN, J. Including the certified question, appellant raises six propositions of law for our consideration. In essence, these assignments of error present three basic questions: (1) Did the court of common pleas have jurisdiction over the forcible entry and detainer action; (2) did the court err in directing a verdict for appellee; and (3) did the court err in denying appellant's motion for a continuance?

## I.

The first issue presented is one which has not been previously addressed by this court. Succinctly stated, the question is whether courts of common pleas have subject-matter jurisdiction over forcible entry and detainer actions?[3] The Court of Appeals answered this question in the affirmative, and we agree.[4]

" 'Jurisdiction has been defined as: The power to hear and determine a cause;***the authority by which judicial officers take cognizance of and decide them;***the power of a court or a judge to entertain an action, petition, or other pro-

---

[3] Appellee argues that its complaint also states a cause of action in ejectment, pursuant to R. C. Chapter 5303, and that courts of common pleas have unquestioned jurisdiction to hear such actions. Because of our resolution of the certified question, we do not decide whether appellee's complaint did, in fact, state a cause of action in ejectment nor do we reach the merits of appellee's argument in this regard.

[4] While an analysis of these sections clearly demonstrates that municipal courts have original jurisdiction in forcible entry and detainer actions, such fact is not dispositive in this case.

ceeding;***a power constitutionally conferred upon a judge or magistrate to take cognizance of and determine causes according to law, and to carry his sentence into execution.' " (Citation omitted.) *Mahoning Valley Ry.* v. *Santoro* (1915), 93 Ohio St. 53, at 56. " 'Jurisdiction***means the authority to hear and determine a cause. Concurrent***means that which is joint and equal in authority.' " *State* v. *King* (1957), 166 Ohio St. 293, at 296.

In Ohio, the judicial power of authority flows, generally, from Section 1, Article IV of the Ohio Constitution.[5] The jurisdictional foundation for courts of common pleas, however, is set forth specifically in Section 4(B) of Article IV, as follows:

"The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

Thus, it can appropriately be said that courts of common pleas are "the constitutional courts of general original jurisdiction in Ohio." 22 Ohio Jurisprudence 3d, 46-47, Courts, Section 16; *State, ex rel. Heimann,* v. *George* (1976), 45 Ohio St. 2d 231. So stating, however, does not answer the question herein presented. "The constitution itself confers no jurisdiction whatever upon that court [Court of Common Pleas], either in civil or criminal cases. It is given a capacity to receive jurisdiction *in all such cases,* but it can exercise none, until 'fixed by law.' " (Emphasis added.) *Stevens* v. *State* (1854), 3 Ohio St. 453, at 455; *State, ex rel. Miller,* v. *Keefe* (1958), 168 Ohio St. 234.

It is clear, therefore, that the power to define the jurisdiction of the courts of common pleas rests in the General Assembly and that such courts may exercise only such jurisdiction as is expressly granted to them by the legislature. *Cincinnati* v. *Bossert Machine Co.* (1968), 16 Ohio St. 2d 76, certiorari denied, 394 U.S. 998; *Wolfrum* v. *Wolfrum* (1965), 2 Ohio St. 2d 237; *Jacobsen* v. *Jacobsen* (1956), 164 Ohio St. 413; *State, ex rel. Black,* v. *White* (1936), 132 Ohio St. 58; *Ellis* v.

---

[5] "The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law." Section 1, Article IV of the Ohio Constitution.

*Urner* (1932), 125 Ohio St. 246; *Hess* v. *Devou* (1925), 112 Ohio St. 1; and *Miller* v. *Eagle* (1917), 96 Ohio St. 106. By this, we do not imply that a court of common pleas is powerless to issue those writs or take such action as is necessary to aid or to protect its statutorily granted jurisdiction. See *State, ex rel. Miller,* v. *Keefe, supra.*

The express legislative grant of jurisdiction to courts of common pleas is contained in R. C. 2305.01.[6] Appellant argues generally that this grant is not broad enough to encompass jurisdiction over actions in forcible entry and detainer. The specific basis for appellant's argument is that the provisions governing the procedures to be followed in the action of forcible entry and detainer are contained in R. C. Title 19, and that the location of such provisions in juxtaposition to the grant of jurisdiction to municipal courts manifests a legislative intent that municipal courts have exclusive original jurisdiction over such actions. Such argument is not well taken.

While it is true that the monetary and subject matter jurisdiction of municipal courts is defined in R. C. 1901.17 and 1901.18,[7] respectively, an analysis of such sections fails to support appellant's argument. As can be easily ascertained, neither section provides that the jurisdiction of municipal courts in such matters is *exclusive.* In fact, the opposite appears to be true. The intent of the General Assembly to provide concurrent jurisdiction in such matters with courts of common pleas can be inferred, for example, from R. C. 1901.18, which states, in part: "***a municipal court has original jurisdiction within its territory: ***(B) In any action or proceeding at law for the recovery of money or personal

---

[6] "The court of common pleas has original jurisdiction in all civil cases where the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts***."

[7] R. C. 1901.17 states, in part:

"A municipal court shall have *original jurisdiction* only in those cases where the amount claimed by any party, or the appraised value of the personal property sought to be recovered, does not exceed ten thousand dollars." (Emphasis added.)

R. C. 1901.18 provides, in pertinent part, that:

"Subject to section 1901.17 of the Revised Code, a municipal court has *original jurisdiction* within its territory:

"***

"(H) In any action in forcible entry and detainer." (Emphasis added.)

property of which the court of common pleas has jurisdiction."
The jurisdiction of municipal courts over proceedings at law,
within the monetary limitations set out in R. C. 1901.17, is
measured not in absolute terms but in terms of the jurisdiction
granted to courts of common pleas.

The General Assembly, had it chosen to do so, was clearly
empowered to deny jurisdiction to courts of common pleas in
forcible entry and detainer actions. See *Wolfrum* v. *Wolfrum,
supra; Miller* v. *Eagle, supra;* and *State, ex rel. Ramey,* v.
*Davis* (1929), 119 Ohio St. 596. It is equally clear that the
General Assembly was cognizant of the difference between
exclusive and concurrent jurisdiction.[8] This being so, it may be
reasonably presumed that had the General Assembly intended
to vest exclusive original jurisdiction over forcible entry and
detainer actions in municipal courts, it would have so provided.

An action in forcible entry and detainer is a civil action and
the courts of common pleas have "original jurisdiction in all
civil cases." R. C. 2305.01, at fn. 6, *supra.*[9] We hold, there-
fore, that courts of common pleas have original jurisdiction
over forcible entry and detainer actions, albeit such original
jurisdiction is concurrent with that of municipal courts.[10]

---

[8] For example, in R. C. 1909.04, the General Assembly provided that "* * *judges
of county courts have *exclusive original jurisdiction* in civil actions for the recovery of
sums not exceeding five hundred dollars and *original jurisdiction* in civil actions for
the recovery of sums not exceeding three thousand dollars." (Emphasis added.)

[9] Appellant also argues that the Municipal Court erred in certifying the pro-
ceedings to the Court of Common Pleas. The basis of this argument is R. C.
1901.22(E): "In any action in a municipal court in which the amount claimed by any
defendant in any statement of counterclaim exceeds the jurisdictional amount, the
judge shall certify the proceedings in the case to the court of common pleas, except in
the Cleveland Municipal Court." Appellant's argument is not well taken.

The clear import of this section is that courts other than the Cleveland Municipal
Court have no discretion as to certifying such proceedings. However, the General
Assembly, for its own reasons, has vested discretion in the Cleveland Municipal Court
as to whether it will certify such matters.

Notwithstanding the trial court's ultimate determination that the pleadings inter-
posed by appellant failed to state a cause of action and were "sham pleadings" inter-
posed solely "for the purpose of delaying the hearing on the [forcible entry and de-
tainer] complaint," we cannot hold that the judge of the Cleveland Municipal Court
abused his discretion in certifying the proceedings to the Court of Common Pleas.

[10] In reaching this conclusion, we do not express an opinion that all such actions
ought to be commenced in courts of common pleas. "The action of forcible entry and
detention, or of forcible detention only, is intended to be a speedy and summary mode

## II.

The majority of appellant's propositions of law are directed toward the trial court's action in directing a verdict against it. The primary thrust of appellant's argument is that the alleged defaults occurred prior to the time appellee acquired title to the property, and that appellee therefore had no basis upon which to support an action in forcible entry and detainer.[11] This, as well as appellant's other arguments, as set forth, *infra,* lacks merit.

The basic facts concerning title to the subject premises are not in dispute. In 1919, the property involved herein was owned by Nellie B. Cole. On May 27, 1919, Cole entered into a lease of the property with Moritz C. Stone and Ignatz N. Stone. The lease was for a term of 99 years, with the rent to be $5,000 per year for the first ten years, and $6,000 per year thereafter, "payable quarterly, in advance, on the first days of April, July, October and January of each year."[12] As indicated

---

for the recovery, in the cases specified in the statute, of lands and tenements." *Carroll* v. *O'Conner* (1874), 25 Ohio St. 617. The municipal courts are well suited to implement the legislative intent of securing speedy and efficient resolution of such causes.

[11] It should be noted that the present action being one in forcible entry and detainer, determines the right to immediate possession of the property and nothing else. *State, ex rel. Jenkins,* v. *County Court* (1961), 114 Ohio App. 231, 233. Moreover, "[j]udgments under sections 1923.01 to 1923.14, inclusive, of the Revised Code, either in the county court, or in the court of common pleas, are not a bar to a later action brought by either party." R. C. 1923.03. Our decision today merely decides the appropriateness of the court's decision in the forcible entry and detainer action. A separate action was commenced to recover alleged arrearages in rental payments and nothing stated herein should be construed as a comment upon this other case.

[12] The lease also contained the following relevant provisions:

"TAXES AND ASSESSMENTS.

"As a further consideration for the letting and leasing of said above described premises, the Lessees further covenant, promise and agree to bear, pay and discharge, in addition to the rent above specified, all taxes, assessments, rates, charges for revenue and all levies, general and special, ordinary and extraordinary of every name, nature and kind whatsoever, including water rates, which may be fixed, charged, levied, assessed or otherwise imposed upon said premises, or upon any and all buildings and improvements thereon, or which may be assessed, levied or imposed upon the leasehold estate hereby created, and upon the reversionary estate in said premises, during the term of this lease.***

"***

"INSURANCE.

"The lessees hereby covenant and agree to and with the Lessor, that the Lessees,

in the record, the lease was eventually assigned to appellant in 1967. The fee was purchased by appellee in 1978.

At the time of the hearing in the instant cause, appellant had paid no rent since 1973, thus creating a purported arrearage of approximately $34,000, including interest; real estate taxes had not been paid in four years, creating an amount due of $6,716.02; and, the premises were not insured. By letter of April 7, 1978, pursuant to the terms of the lease and R. C. 1923.04, appellee demanded that appellant cure the defaults or suffer forfeiture of the lease. Appellant did not respond to this notice, nor did it pay the delinquent taxes or secure insurance on the premises.

Appellant defended on the theory that a forfeiture cannot be declared based upon defaults occurring prior to the date upon which title passed to appellee. Because there is presently pending a separate action for recovery of purported arrearages in rent, we express no opinion on that question. The lease, however, makes the obligation to pay taxes and maintain insurance a continuing one. While there may be some question whether appellee, had it elected to pay the delinquent taxes as it was empowered to do under the lease, would be entitled to reimbursement from appellant, it cannot be disputed that the taxing authorities are not only empowered but also

---

will, at all times, during the term of this lease, keep all buildings and improvements now on or which may hereafter be put or placed on said premises, insured against loss or damage by fire and water in an amount equal to the insurable value of all said buildings and improvements, exclusive of the foundations thereof.* * *

" * * *

"FORFEITURE ON DEFAULT.

"It is further understood, covenanted and agreed by and between the Parties hereto, that if any default shall be made by the Lessees in any payment of rent or taxes, assessments, insurance premiums, water rents or any other sum herein stipulated or agreed to be paid, or the Lessees shall fail to keep and perform any other covenant, condition or agreement herein provided on its part to be performed, and such default shall exist for a period of sixty days, then, and in that case, the Lessor may serve upon said Lessees written notice of such default, and if such default shall then continue, without being wholly remedied for a period of thirty days, after the service of such notice, then, it shall and may be lawful for the Lessor, at her election, without further notice, to declare said demised term ended and enter into the demised premises, and repossess the buildings and improvements situated thereon, or any part thereof, either with or without process of law, and the said Lessees do in such event hereby waive any demand for possession of the demised premises, and any and all buildings and improvements then situated thereon."

obligated to do so. Thus, the fact that appellee obtained title while such taxes were delinquent has no bearing upon this question. Also, even if the prior owners did not insist upon the premises being insured, appellee was entitled to do so and appellant's failure to insure the premises, under the facts of this case, is sufficient to constitute a default in and of itself.

Appellant also states that it had an agreement with the previous owners to waive payment of rent and taxes in exchange for maintaining the property. Upon the state of the record in this case, the trial court apparently found that no such agreement existed, and we concur. It appears that if such agreement did exist, it was negotiated with John L. Doyle, the spouse of one of the three then owners of the property. Since Doyle was not the owner of the property, his only role in such negotiations was as an agent of such owners and the only power which he possessed to bind such owners was that which was granted to him by such owners, either expressly or by necessary implication. It is clear, however, that not only did Doyle not have such authority but also appellant's president, Willis, knew that Doyle did not possess such authority.[13] Moreover, there is no evidence that, assuming the existence of such waiver, it included a waiver of the requirement to maintain insurance on the premises. There being no evidence of waiver or compliance, we cannot say that the trial court erred in its judgment.

Appellant urges this court to apply the balancing of the equities test set forth in *Southern Hotel Co.* v. *Miscott, Inc.* (1975), 44 Ohio App. 2d 217, and deny forfeiture of the lease on that basis.[14] While we do not hold that, in the appropriate case, such test may not be applied; we find in this case no basis for affording equitable relief to appellant.

Appellant also alleges that it was error for the trial court to direct a verdict against it when it had made a "tender" of payments sufficient to cure any asserted defaults under the

---

[13] When asked the following question by appellee's counsel: "Did you understand that he [Mr. Doyle] had authority to make a deal with you?", appellant's president responded: "No, because he told me at that time he didn't have authority."

[14] Appellant also sought certification on the basis that the Court of Appeals' decision in the instant case is in conflict with *Miscott, supra.* Certification on this basis was properly denied.

lease. The purported "tender" is contained in the following colloquy during the cross-examination of an officer of appellee by appellant's counsel:

"Q. All right. Now, sir, on behalf of University Circle Property Development Corporation, we are hereby tendering to you an offer of $1,500 rent and we will pay those taxes forthwith. Will you accept that?

"A. No."

Regardless of what this amount represented, to be effective, a tender must be made within a reasonable time.

The Court of Appeals held that the "tender" was not made within a reasonable time. In this, we find no error. Moreover, assuming that the above-quoted language constitutes a valid tender of rent and taxes, it does not include an offer to obtain insurance coverage. This court has stated that, " '***[g]reat strictness is required of a party to a suit, who would avail himself of a tender or of an offer to perform.' " (Citation omitted.) *Raudabaugh* v. *Hart* (1899), 61 Ohio St. 73, at 90. While equitable considerations may intervene to ameliorate this rule, in appropriate cases, we do not view the case *sub judice* as being within that class of cases warranting such exception.

Appellant further argues that a genuine issue of fact existed as to whether it was properly served with the notice to vacate. In pertinent part, R. C. 1923.04 provides:

"(A) Except as provided in division (B) of this section, a party desiring to commence an action under this chapter, shall notify the adverse party to leave the premises, for the possession of which action is about to be brought, three or more days before beginning the action***by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode or at the premises from which the defendant is sought to be evicted.***"

The uncontroverted evidence discloses that such notice was left with Willis' secretary at appellant's offices. Willis in contesting the sufficiency of the notice testified merely that he, personally, never received the same. We believe that the evidence was such that the trial court properly concluded that there was no genuine issue as to appellant's receipt of the notice to vacate. We hold that, for purposes of compliance with R. C. 1923.04, a corporation's "usual place of abode" is the of-

fice of the corporation. The notice given was reasonably calculated to apprise appellant of both appellee's demand that it cure the defaults under the lease, and, failing such, that appellee would terminate the lease and repossess the premises.

Construing the evidence, as it must, most strongly in favor of appellant, the trial court determined that reasonable minds could come to but one conclusion, and that conclusion was adverse to appellant. After reviewing the record, and applying the law to the evidence therein contained, we conclude that the trial court did not err in directing a verdict against appellant.

## III.

Appellant's third major proposition of law relates to the refusal of the trial court to grant a continuance in this case. On June 30, 1978, some 42 days after the complaint was filed herein, and after the case had been set for trial, appellant filed its motion to continue the hearing on this matter for 90 days. In its motion, appellant listed five factors in support of the motion: (1) "defendant has had no chance to engage in any form of discovery;" (2) "[a]ll the necessary parties to this action have not been named;" (3) "the same property under controversy in the case at bar is the subject of extensive prior litigation in the Cuyahoga County Common Pleas Court***and in Federal District Court***;" (4) "[t]he defendant's attorney was not able to confer with an officer of the defendant's corporation, either the afternoon of June 29 or at 8:30 a.m. the morning of June 30;" and (5) "[d]efendant's counsel is scheduled to appear in trial in Ashland County, Ohio on July 6, 1978." Appellant argues that the refusal of the trial court to grant the continuance deprived it of the due process of law guaranteed by both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. Such argument is specious.

First, appellant cites no reason for waiting until, essentially, the eve of trial to begin preparation of its case. Appellant's assertion that it had "no chance to engage in discovery" conveniently ignores the 42 days that elapsed between the filing of the complaint and the filing of the motion for continuance. Second, appellant fails to show which "necessary parties," if any, have not been joined. Third, ap-

pellant failed to demonstrate what relevance, if any, such other pending litigation has to the instant cause. Fourth, defendant's counsel was able to try his case in Ashland County, as scheduled. Fifth, and perhaps of most importance, appellant, if there was any basis to its complaint, had the means of its own salvation at hand.

R. C. 1923.08 provides that:

"No continuance in an action under sections 1923.01 to 1923.14, inclusive, of the Revised Code, shall be granted for a longer period than eight days, unless the defendant, applying therefore gives a bond to the adverse party, with good and sufficient surety, to be approved by the judge of the county court, conditioned for the payment of rent that may accrue, if judgment is rendered against him."

In order to secure the continuance which appellant maintains was necessary to prevent a deprivation of its constitutional rights, appellant need only have given the required bond. There is no evidence, whatsoever, that the appellant complied with R. C. 1923.08. Indeed, there is no evidence that appellant even attempted to comply with the requirements of that statute. Absent such compliance, appellant was not entitled to the continuance requested. Accordingly, we find no error in the court's refusal to grant such continuance.

Upon a review of the record, we find no errors prejudicial to appellant. To the extent that they are inconsistent herewith, *Harbine* v. *Davis, supra; Lynam* v. *Schueler, supra; Mann* v. *Sexton, supra;* and, *State, ex rel. Horn,* v. *Cincinnati Municipal Court* (1958), 108 Ohio App. 57, are repudiated.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.