Moyer, C.J.,
concurring in part and dissenting in part.
{¶ 46} We live in a technological age in which the dividing line between life and death is sometimes a fine one. Aiden Stein “lives” because his heart is beating and his body is capable of sustaining itself when provided nutrition, water, and technological assistance. We are told that every area of his brain, however, has been significantly damaged except for the “very deep center of the brain stem which is the very primitive area of the brain.” The clear consensus of medical opinion is that Aiden’s ability to relate to people and events around him no longer exists — and will never return. He is described as being in a persistent vegetative state with no chance for recovery. The trial court described Aiden’s existence as “not life but a cruel shadow of life.”
{¶ 47} Ethical people of good will disagree as to what is in the best interest of a person under such circumstances. I agree with the majority that the ultimate inquiry before us is not whether life-supporting treatment should be continued. Rather, the ultimate question we must resolve is whether Aiden’s parents retain the legal right to make that decision, even though one parent is suspected of (but not charged with) causing Aiden’s injuries and the other believes in the father’s innocence. Or did the state, acting through the probate court and in light of the accusations against one or both of Aiden’s parents, validly vest a guardian with *39 the limited authority to make the decision whether life-supporting treatment should be continued? The issue is Solomonic.
{¶ 48} As does the majority, I acknowledge that the right of natural parents to direct the care and upbringing of a child is a fundamental liberty interest of constitutional dimension. Troxel v. Granville (2000), 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49. However, that authority is not unlimited. The state clearly has parens patriae power over minors in certain circumstances.
{¶ 49} Ohio courts do not, however, have inherent jurisdiction to determine a child’s best interests, as they possess only the jurisdiction that the General Assembly has expressly conferred upon them. See Section 4(B), Article IV of the Ohio Constitution; Seventh Urban, Inc. v. Univ. Circle Property Dev., Inc. (1981), 67 Ohio St.2d 19, 22, 21 O.O.3d 12, 423 N.E.2d 1070. Thus the question remains whether Ohio’s statutory scheme grants the trial court the authority to terminate Aiden’s life support contrary to the will of his parents.
{¶ 50} The trial court proceeded under the authority of R.C. 2111.02 and 2111.06. R.C. 2111.02 states:
{¶ 51} “(A) When found necessary, the probate court * * * shall appoint * * * a guardian of the person, the estate, or both, of a minor * * *.
{¶ 52} “* * *
{¶ 53} “(B)(1) If the probate court finds it to be in the best interest of [a] * * * minor, it may appoint * * * on its own motion or on application by an interested party, a limited guardian with specific limited powers. * * * [T]he order of appointment and letters of authority of a limited guardian shall state the reasons for, and specify the limited powers of, the guardian. The court may appoint a limited guardian for a definite or indefinite period. * * *
{¶ 54} “(C) Prior to the appointment of a * * * limited guardian under division (A) or (B)(1) of this section, the court shall conduct a hearing on the matter of the appointment.” (Emphasis added.)
{¶ 55} R.C. 2111.06 provides:
{¶ 56} “A guardian of the person of a minor shall be appointed as to a minor having neither father nor mother, or whose parents are unsuitable persons to have the custody and tuition of such minor, or whose interests, in the opinion of the court, will be promoted thereby. A guardian of the person shall have the custody and provide for the maintenance of the ward, and if the ward is a minor such guardian shall also provide for the education of such ward.” (Emphasis added.)
{¶ 57} R.C. 2111.02 and 2111.06 vest the probate courts of Ohio with broad power. Upon a mere finding that it is in the “best interest of a * * * minor,” R.C. 2111.02(B)(1) authorizes a probate court to supplant a parent’s rights and *40 responsibilities through appointment of a limited guardian. Similarly, R.C. 2111.06 authorizes a probate court to appoint a guardian of a minor not only where the court finds the child’s natural parents to be “unsuitable persons” but also upon the mere finding that the child’s “interests * * * will be promoted thereby.”
{¶ 58} These conclusory statutory criteria stand in stark contrast to the comprehensive statutory scheme set forth in R.C. Chapter 2151 governing the adjudication of children as dependent, neglected, or abused, and ultimately, the permanent termination of a natural parent’s legal rights. Indeed, where parents are believed to be unfit, R.C. Chapter 2151 is more commonly invoked to accomplish transfer of responsibility for children from natural parents to the state than is the probate code.
{¶ 59} Nevertheless, R.C. 2111.02 clearly authorizes a probate court to appoint a limited guardian where the court finds it to be in the child’s best interests to do so. Nothing in the text of the statute precludes the court from authorizing a limited guardian to direct a child’s medical provider to terminate life support.
{¶ 60} I do not accept the majority’s premise that a decision to withdraw life-supporting treatments is something other than a medical decision. Nor do I believe that a decision to withdraw life-supporting treatments is equivalent to the termination of the parent-child relationship. That relationship is legal in nature, and while the death of either clearly changes it, the relationship survives death. See, for example, the statute of descent and distribution, R.C. 2105.06(F), providing that a surviving parent is entitled to inherit from the estate of a deceased child not survived by a spouse or his or her own children.
{¶ 61} In short, I believe that the General Assembly has authorized probate courts to enter orders like that made by the Probate Court of Summit County.
{¶ 62} I believe that the question whether R.C. 2111.02 and 2111.06 were constitutionally applied to Aiden’s parents is a separate, serious, and legitimate one. The court of appeals refused to address it, observing that the parents first raised constitutional objections “during their closing argument at the conclusion of a four-day hearing, when it was clearly too late for the trial court to correct the alleged error.”
{¶ 63} I disagree. It is true that counsel’s advocacy was less than artful and that he did not specifically argue that application of the guardianship statutes to Aiden’s parents would be unconstitutional. I cannot subscribe to the premise, however, that constitutional issues were waived because not raised “at a time when such error could have been avoided or corrected by the trial court.” State v. Childs (1968), 14 Ohio St.2d 56, 43 O.O.2d 119, 236 N.E.2d 545, paragraph three of the syllabus.
*41 {¶ 64} Counsel for Aiden’s parents stated at closing argument:
{¶ 65} “The issue in this case is not merely jurisdiction * * *. This court’s primary jurisdiction over guardianship, your Honor, is a mere footnote to the fundamental interest in life, liberty and property which is the core constitutional issue in this case.
{¶ 66} “* * *
{¶ 67} “This constitutional issue is — partakes of the First Amendment, your Honor, the associative right of the parent, the Fifth Amendment in the depravation [sic] of a human life, and most particularly the Fourteenth Amendment through the state’s participation through the person of this honorable court in making this decision. And, your Honor, I do not question the jurisdiction of the Court, I simply request that the fundamental due process to be accorded my clients be permitted to proceed just as this application for a best interest substitute of judgment has been permitted to proceed.
{¶ 68} “* * *
{¶ 69} “And respectfully, your Honor, * * * I’m asking this Court to reconsider its own opinion in [a prior analogous case] and that’s because of the constitutional issues presented * * *.
{¶ 70} “* * *
{¶ 71} “My clients have * * * not been permitted their procedural due process and substantive due process rights before the state of Ohio.”
{¶ 72} In my view, these comments adequately preserved constitutional issues for appellate review. The trial court clearly was put on notice that Aiden’s parents believed that their constitutional rights were in jeopardy before the trial court granted the guardianship application. The fact that the written trial court decision granting the guardianship did not address these issues does not mean that they were not raised. Nor did they waive their constitutional rights by stipulating that a guardian would be appointed to make medical decisions not involving the termination of life support. I note, moreover, that “[e]ven where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it.” (Emphasis added.) In re M.D. (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, at syllabus (reviewing the constitutionality of a statute as applied even though the constitutional challenge was presented at the trial court “in general terms”). Id. at 151, 527 N.E.2d 286.
{¶ 73} In Troxel, the Supreme Court of the United States reviewed a Washington visitation statute invoked by grandparents Jenifer and Gary Troxel. The statute permitted “ ‘[a]ny person’ to petition a superior court for visitation rights ‘at any time,’ and authorize^] that court to grant such visitation rights whenever *42 ‘visitation may serve the best interest of the child.’ ” Id., 530 U.S. at 60, 120 S.Ct. 2054, 147 L.Ed.2d 49. The children’s mother did not object to a grant of some visitation, but asked the court to order only one day of visitation per month, with no overnight stay. The superior court, however, entered a visitation order allowing the grandparents more extensive visitation based on its conclusion that more extensive visitation was in the children’s best interests.
{¶ 74} Justice O’Connor of the Supreme Court of the United States concluded, in a plurality opinion, that, as applied, the “breathtakingly broad” Washington statute exceeded the bounds of the Due Process Clause. Id. at 67, 120 S.Ct. 2054, 147 L.Ed.2d 49. She concluded that the Washington trial court had “directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child,” and specifically noted that the grandparents “did not allege, and no court has found, that [the mother] was an unfit parent.” Id. at 69 and 68, 120 S.Ct. 2054, 147 L.Ed.2d 49. The latter aspect of the case was characterized as “important.” Id. at 68, 120 S.Ct. 2054, 147 L.Ed.2d 49.
{¶ 75} Notably, in the case at bar, allegations of unfitness have been made against one, if not both, of Aiden’s parents. The trial court did not, however, find that either parent was responsible for Aiden’s injuries, only that they may have been responsible.[1]
{¶ 76} After Troxel it is unclear whether, and under what circumstances, a state may constitutionally override a fit parent’s decision as to the care or upbringing of a child based on the state’s disagreement with the parent’s conclusion as to a child’s best interests. (“Our cases, it is true, have not set out exact metes and bounds to the protected interest of a parent in the relationship with his child.” Id., 530 U.S. at 78, 120 S.Ct. 2054, 147 L.Ed.2d 49 [Souter, J„ concurring in judgment].) It seems clear, however, that “the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a ‘better’ decision could be made,” id. at 72-73, 120 S.Ct. 2054, 147 L.Ed.2d 49, and that a court *43 must accord “special weight” to a fit parent’s determination of the child’s best interests, id. at 70,120 S.Ct. 2054,147 L.Ed.2d 49.
{¶ 77} It is not overly dramatic to observe that this case presents a life-and-death issue and implicates one of our society’s most precious and fundamental interests — the rights of parents in their relationship with their children. For this reason I believe that this cause should be reversed and remanded to the court of appeals with instructions that it consider the constitutional implications of the actions of the trial court.

. {¶ a} The trial court appointed a limited guardian based on the following reasoning:
{¶ b} “Matthew Stein has allegedly abused Aiden Stein * * *. Matthew Stein is the subject of a criminal investigation related to the infliction of Aiden’s current injuries and will undoubtedly be charged with homicide or negligent homicide if Aiden is allowed to die from the underlying cause of his condition. Further, the mother, Arica, supports the father’s assertion that he is not to blame for the current injuries. Additionally, there is evidence that Aiden Stein has suffered prior brain bleeds consistent with nonaccidental trauma. Neither Arica Heimlich or Matthew Stein can be ruled out as suspects in the prior injury or injuries that Aiden has suffered. Therefore, Arica Heimlich and Matthew Stein are in a position of a conflict of interest and are unsuitable such that this Court in its role as parens patriae has a duty to act in the best interest of Aiden Stein and appoint a neutral third party as limited guardian to make medical decisions on his behalf.” (Emphasis added.)