[Cite as *Hamdan v. Traish*, 2015-Ohio-4561.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IMAD F. HAMDAN, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 14 MA 14 |
| V. | ) | |
| | ) | OPINION |
| MOHAMMAD TRAISH, ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
                             Pleas of Mahoning County, Ohio
                             Case No. 2013CV213

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiff-Appellee         Attorney Michael O. Kivlighan
                              3685 Stutz Dr., Suite 100
                              Canfield, Ohio 44406

For Defendants-Appellants      Attorney Jeffrey A. Kurz
                              42 N. Phelps St.
                              Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: October 26, 2015

DONOFRIO, P.J.

{¶1} Defendants-appellants, Mohammad and Neda Traish, appeal from a Mahoning County Common Pleas Court judgment on an eviction action filed by plaintiff-appellee, Imad Hamdan.

{¶2} Neda Traish and Imad Hamdan are sister and brother. In 2006, Hamdan purchased a home at 104 Mayflower Drive in Boardman. The Traishes and their children moved into the Mayflower Drive home in November 2006. The Traishes entered into an oral agreement with Hamdan regarding the house. The terms of the agreement are at issue in this case.

{¶3} According to the Traishes, they did not have credit to purchase a house. Hamdan offered to buy a house for them. The Traishes agreed to pay Hamdan an amount equal to $144,500, which they would pay in monthly payments equal to the mortgage payments in a land installment contract. Pursuant to this oral agreement, the Traishes paid Hamdan approximately $1,300 per month.

{¶4} According to Hamdan, he agreed to purchase the house for the Traishes with the understanding that the Traishes would obtain their own financing within two months. The Traishes, however, were unable to obtain financing. Consequently, Hamdan agreed to allow the Traishes to remain in the house on a monthly basis as long as they paid an amount equal to the mortgage, taxes, and insurance.

{¶5} Whatever the agreement between the parties, it continued for almost six years until, on October 12, 2012, Hamdan filed a complaint to evict the Traishes. The complaint also included a claim for breach of the alleged oral month-to-month lease. The Traishes filed an answer and counterclaim. Among other affirmative defenses, the Traishes asserted they had entered into an oral agreement with Hamdan for the purchase of the home and had paid over 20 percent of the value of the property during the past five years. They asserted counterclaims for breach of contract, unjust enrichment, promissory estoppel, equitable estoppel, fraud, conversion, and requested a declaratory judgment and injunctive relief.

{¶6} On March 1, 2013, the matter proceeded to a trial before a magistrate

solely on the eviction count of Hamdan's complaint. The magistrate found that no written agreement existed between the parties and that the Statute of Frauds prohibited an oral contract for the purchase of real estate. He found that the Traishes' contention that their partial performance removed this matter from the Statute of Frauds was without merit because there was no meeting of the minds between the parties. The magistrate also found there was insufficient evidence to find that a land installment contract existed between the parties, noting that the Traishes could not identify what percentage of their rental payments were to be applied to principal or interest, what the interest rate was, or what type of deed was to be delivered upon completion. Consequently, the magistrate found the evidence supported a finding that the parties entered into a month-to-month tenancy. And he found that Hamdan complied with the applicable statutes in terminating the month-to-month tenancy. Therefore, the magistrate ruled that Hamdan was entitled to a judgment of restitution and a writ of execution on the Mayflower Drive property.

{¶7} The Traishes filed objections to the magistrate's decision. They listed 16 objections including objections to the application of the Statute of Frauds, the finding of a month-to-month tenancy, the finding of no meeting of the minds, and the failure to require Hamdan to treat this as a foreclosure case.

{¶8} The trial court overruled the objections, adopted the magistrate's decision, and entered judgment accordingly. It then set the matter for a pretrial hearing on the remaining claims. The Traishes did not appeal from the eviction judgment entry.

{¶9} The Traishes requested a stay of the eviction judgment pending the resolution of the pending claims, but the trial court denied the stay. The Traishes were removed from the Mayflower Drive property on August 13, 2013.

{¶10} Next, Hamdan filed a motion for summary judgment on the Traishes' counterclaims, arguing there was no genuine issue of material fact that the parties entered into a month-to-month tenancy and the Traishes breached the rental agreement. Hamdan argued that the Traishes' counterclaims were now barred by

the doctrine of res judicata claiming that the Traishes already had their chance to litigate the facts underlying their claims.

**{¶11}** The Traishes responded by arguing that the only issue in the previous trial was whether there was an oral land installment contract or an oral lease agreement with the option to purchase. They asserted that the issues of whether Hamdan was liable to them for unjust enrichment, promissory estoppel, equitable estoppel, fraud, and/or conversion still remained before the court.

**{¶12}** The trial court found Hamdan was entitled to summary judgment based on the doctrine of res judicata. It noted the Traishes had already argued that there was an oral land installment contract in which their rental payments were being applied toward the purchase of the property. The court found all of the Traishes' counterclaims were premised on the same contention. It stated that the Traishes had already litigated these facts and the court had ruled that the parties entered into a month-to-month tenancy as opposed to an oral land installment contract. The court went on to find that the Traishes' counterclaims were further barred by the Statute of Frauds and there was no meeting of the minds.

**{¶13}** The Traishes filed a timely notice of appeal on February 7, 2014.

**{¶14}** This court sent the matter back to the trial court on a limited remand because Hamdan's claim for damages for breach of the oral lease remained outstanding. Subsequently, the magistrate held a hearing and determined that Hamdan was entitled to damages of $21,587.75. The trial court adopted this decision and entered judgment on April 10, 2015.

**{¶15}** The Traishes now raise three assignments of error. Their first assignment of error states:

THE TRIAL COURT ERRED BY NOT TREATING THIS CASE AS ANY OTHER CIVIL CASE AS REQUIRED BY ORC §1923.081, BY RULING IN FAVOR OF PLAINTIFF ON THE ISSUE OF POSSESSION AFTER A BOND HAD BEEN POSTED UNDER ORC §1923.061(B) AND BY FAILING TO REQUIRE PLAINTIFF TO FORECLOSE ON THE PROPERTY.

**{¶16}** In this case, the magistrate held a trial solely on the eviction claim. It continued the matter as to the Traishes' counterclaims. After the trial on the eviction claim, the court concluded there was no oral contract between the parties and the Traishes were barred from claiming the existence of an oral contract based on the Statute of Frauds. Later, on summary judgment, Hamdan argued the Traishes were barred from arguing their counterclaims based on the doctrine of res judicata. The trial court agreed.

**{¶17}** The Traishes now argue that pursuant to R.C. 1923.081, the trial court was to treat this case like any other civil case, meaning it should have held one trial on both the issue of possession and on the Traishes' counterclaims.

**{¶18}** R.C. 1923.081 provides in pertinent part:

A trial in an action for forcible entry and detainer for residential premises * * * pursuant to this chapter may also include a trial on claims of the plaintiff for past due rent and other damages under a rental agreement, unless for good cause shown the court continues the trial on those claims. For purposes of this section, good cause includes the request of the defendant to file an answer or counterclaim to the claims of the plaintiff or for discovery, in which case the proceedings shall be the same in all respects as in other civil cases. If, at the time of the trial, the defendant has filed an answer or counterclaim, the trial may proceed on the claims of the plaintiff and the defendant.

**{¶19}** Thus, pursuant to R.C. 1923.081 the trial court may allow a forcible entry and detainer action to proceed to a separate trial from that of any other claims or counterclaims. It may try the other claims or counterclaims at the same trial, but the statute does not require it to do so. Therefore, it was not error for the court to hold a trial solely on the forcible entry and detainer claim.

**{¶20}** Second, the Traishes argue that because they made their rent payments in escrow pursuant to R.C. 1923.061(B), the trial court was required to rule

in their favor on the issue of possession.

{¶21} R.C. 1923.061(B), on which the Traishes' rely, provides in relevant part:

In an action for possession of residential premises *based upon nonpayment of the rent* or in an action for rent when the tenant or manufactured home park resident is in possession, the tenant or resident may counterclaim for any amount the tenant or resident may recover under the rental agreement or under Chapter 4781. or 5321. of the Revised Code.

(Emphasis added.)

{¶22} The statute is clear that it applies in actions for possession based on the nonpayment of rent. It makes no mention of other eviction actions. The present eviction action was not for the nonpayment of rent. Therefore, by its terms, the statute does not apply in this case.

{¶23} Third, the Traishes contend that because they complied with the terms of their agreement with Hamdan for over six years, Hamdan was required to proceed under R.C. 5313.07 and file a foreclosure action instead of filing a forcible entry and detainer action.

{¶24} R.C. 5313.07 provides that if the vendee of a land installment contract has made payments according to the contract for a period of five years or more from the date of the first payment or has paid a total sum equal to or in excess of 20 percent of the purchase price, the vendor may only recover possession of his property by use of a foreclosure proceeding and judicial sale of the foreclosed property.

{¶25} The problem with this argument is that it goes to the very heart of the case. The issue in this case is whether the parties entered into a month-to-month tenancy or whether they entered into a land installment contract. Hamdan asserted, and the trial court ultimately found, that the parties entered into a month-to-month tenancy. Therefore, Hamdan properly filed this action as a forcible entry and detainer

action. Had he filed it as a foreclosure action, Hamdan would have defeated his position that the parties only entered into a month-to-month tenancy. Thus, because the trial court found that the parties entered into a month-to-month tenancy, a forcible entry and detainer action was proper.

{¶26} Accordingly, the Traishes' first assignment of error is without merit.

{¶27} The Traishes' second assignment of error states:

THE TRIAL COURT ERRED WHEN IT HELD THAT THERE WAS NOT A MEETING OF THE MINDS BETWEEN THE PARTIES AND THAT DEFENDANTS' AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT WERE BARRED BY THE STATUTE OF FRAUDS.

{¶28} The Traishes acknowledge that generally the Statute of Frauds bars an oral agreement for the sale of real estate. They argue, however, that by raising a claim of promissory estoppel their oral agreement was taken outside of the Statute of Frauds.

{¶29} The Traishes assert that they relied on Hamdan's representations of a "rent-to-own" agreement and they performed their end of this agreement by making payments to Hamdan for six years. They contend the evidence presented at trial supports their argument. They specifically point to the testimony of Diana Amerra Hamdan, another of Hamdan's relatives, who testified that Hamdan also offered to purchase a house for her under the same terms as the Traishes.

{¶30} Additionally, the Traishes argue the trial court erred in admitting evidence of letters sent between their counsel and Hamdan's counsel during settlement negotiations where the term "rent" was used interchangeably with "payments toward the purchase of the house."

{¶31} Ohio's Statute of Frauds provides that no action shall be brought concerning the sale of real property unless the agreement upon which the action is brought, or some memorandum or note thereof, is in writing and signed by the party

to be charged.  R.C. 1335.05.

**{¶32}** The statue of frauds has an exception in the case of promissory estoppel.  *Teeter v. Teeter*, 7th Dist. No. 13 CA 887, 2014-Ohio-1471, ¶¶15-16.  But the promissory estoppel exception to the statute of frauds is only permitted in the limited circumstances where the promisor has either misrepresented that the statute of frauds' requirements have been met or has promised to make a memorandum of the agreement.  *Wells Fargo Bank, N.A. v. Bielec*, 10th Dist. No. 13AP-330, 2014-Ohio-1805, ¶23, citing *Huntington Natl. Bank v. Antrobius*, 11th Dist. No.2012-P-0036, 2012-Ohio-5936, ¶33, 983 N.E.2d 932; *Beaverpark Assoc. v. Larry Stein Realty Co.*, 2d Dist. No. 14950, (Aug. 30, 1995); *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App.3d 613, 622 N.E.2d 1093 (8th Dist.1993).

**{¶33}** There is no evidence suggesting that either of these requirements to the promissory estoppel exception occurred in this case.  Both Neda and Mohammad Traish testified and neither of them suggested that Hamdan either misrepresented that the statute of frauds' requirements were met or promised to make a memorandum of the alleged agreement.  Therefore, the statute of frauds controlled.

**{¶34}** Accordingly, the Traishes' second assignment of error is without merit.

**{¶35}** The Traishes' third assignment of error states:

THE TRIAL COURT ERRED WHEN IT DISMISSED DEFENDANTS' COUNTERCLAIMS AS BEING BARRED BY THE DOCTRINE OF RES JUDICATA AND THE STATUTE OF FRAUDS.

**{¶36}** In their final assignment of error, the Traishes argue that res judicata and collateral estoppel do not apply to counterclaims in forcible entry and detainer cases.  Therefore, they argue, their claims for breach of an oral contract is not barred.  Moreover, they argue that their counterclaims for fraud, conversion, and unjust enrichment were not based on any contracts and, therefore, the statute of frauds could not bar them.

{¶37} Pursuant to the doctrine of res judicata, a valid, final judgment on the merits bars any subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the first action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus.

{¶38} The doctrine of res judicata is made up of two parts: claim preclusion (res judicata) and issue preclusion (collateral estoppel). Claim preclusion prevents subsequent actions by the same parties based on any claim arising out of a transaction that was the subject matter of a previous action. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶6. Issue preclusion prevents re-litigation of any fact or point that was determined by a court in a previous action between the same parties. *Id.* at ¶7. "Issue preclusion applies even if the causes of action differ." *Id.*

{¶39} R.C. 1923.03 provides that judgments under the forcible entry and detainer chapter "are not a bar to a later action brought by either party." An action in forcible entry and detainer "determines the right to immediate possession of the property and nothing else." *Seventh Urban, Inc. v. Univ. Circle Prop. Dev., Inc.*, 67 Ohio St. 2d 19, 25, 423 N.E.2d 1070 (1981), fn. 11. In addressing res judicata as applied to forcible entry and detainer actions, this court found that a forcible entry and detainer action "by its very statutory construction is summary in nature and determines one point only, the right to immediate possession." *John D. Tonkovich & Son, Inc. v. N. Am. Coal Corp.*, 7th Dist. No. 81-B-7, 1981 WL 2700, at *1 (Dec. 30, 1981). We noted that our determination was supported by the fact that a judgment in forcible entry and detainer does not operate as a bar to later and other proceedings. *Id.*

{¶40} But courts have held that a "forcible entry and detainer action bars re-litigation of issues that were *actually and necessarily decided* in the former action." (Emphasis added.); *McAlpine v. Patrick*, 8th Dist. No. 86453, 2006-Ohio-1101, ¶10. R.C.1923.03 permits subsequent suits between landlords and tenants involving issues and disputes *not actually litigated* in the previous cause of action. *Showe Mgt.*

*Corp. v. Hazelbaker*, 12 Dist. No. CA2006-01-004, 2006-Ohio-6356, ¶9. When the trial court has already actually and necessarily determined an issue in the forcible entry and detainer action, the issue is barred by the doctrine of res judicata. *Marous/Church, LLC v. Stanich*, 11th Dist. No. 2000-L-188, 2001-Ohio-8763.

**{¶41}** Thus, in order to determine whether res judicata bars the litigation of the Traishes counterclaims in this case we must determine whether the issues raised in the counterclaims were actually litigated and determined.

**{¶42}** The Traishes raised counterclaims for breach of oral contract, unjust enrichment, promissory estoppel, equitable estoppel, fraud, and conversion. Each one of these claims begins by making the same, specific allegations that (1) the Traishes entered into an oral contract with Hamdan for the purchase of the Mayfield Drive property, that (2) the Traishes made monthly payments to Hamdan, which payments were to be applied to the purchase price of the house, and that (3) Hamdan led the Traishes to believe that these payments were being applied to the purchase price of the house and the Traishes relied on these alleged representations. (Answer and Counterclaim).

**{¶43}** These issues, whether the parties entered into an oral contract for the purchase of the property and whether Hamdan was to apply the Traishes' monthly payments to the purchase of the house, were specifically litigated and determined by the trial court in the forcible entry and detainer trial.

**{¶44}** The trial court started its analysis by stating that the issue before it was "whether there is an oral land contract or an oral lease agreement with option to purchase." The court went on to find that there was no written agreement between the parties. And it found that the Traishes were unable to testify as to the essential elements of an oral land contract such as what percentage of their rental payments were to be applied to principal or interest, what the interest rate was, and what type of deed was to be delivered upon completion. The court further found that the Traishes were not able to establish a "meeting of the minds," which could have removed the alleged oral contract from the statute of frauds. Based on the above,

the trial court found that the parties entered into a month-to-month tenancy whereby Hamdan agreed to rent the house to the Traishes for an amount equal to the monthly principal and interest payment along with taxes and insurance.

**{¶45}** All of the Traishes' counterclaims are based on the allegation that the parties entered into a land installment contract. The counterclaims allege that Hamdan breached this land installment contract and was unjustly enriched by refusing to honor the contract and the Traishes suffered damages because they relied on the alleged land installment contract. As can be seen from the trial court's findings, these issues were actually litigated and determined. Therefore, the trial court properly granted summary judgment on the Traishes' counterclaims based on the doctrine of res judicata.

**{¶46}** Accordingly, the Traishes' third assignment of error is without merit.

**{¶47}** For the reasons stated above, the trial court's grant of summary judgment is hereby affirmed.

Waite, J., concurs.

Robb, J., concurs.