Meyer, J.
(dissenting). The issue in this case is not whether “underlying facts and circumstances” surrounding an unlawful arrest may be received in evidence at trial. The issue is whether a prosecutor may be permitted to defeat a pretrial ruling in which a knife, the proceeds of a robbery and a showup identification have been suppressed by adducing testimony that could have served no other purpose and raised no other reasonable inference than that the defendant possessed a weapon when apprehended and, shortly after his apprehension, was positively identified by the victim of the crime.
Turning first to the suppression of physical evidence, I have no doubt that Officers Scanlon and Calise were barred by the suppression court’s ruling from testifying that a knife was found in defendant’s pants pocket. Yet the majority sanctions testimony from each officer that defendant reached into his pants pocket immediately after the plainclothes officers identified themselves as police and that, in response to defendant’s motion, each drew his gun. On direct examination, the officers testified as follows:
“[Scanlon]: We drove into the construction site, stopped the car behind [defendant] to his right as he was walking along, then we told him to hold up a second.
“Q. What did you do when you got out of your car?
“A. As I stopped the car and I told that to him, I noticed that he had his hand in his right pocket.
“Q. What did you do?
“A. I drew my revolver.
*430 “Q. What did you do then?
“A. When he turned, he had his hand in his pocket.
* * *
“[Calise]: I drew my gun as we exited the car, had our shield out, identified ourselves as being police, at which time the defendant put his hand in his pocket and I grabbed his arm.
“Q. Was he placed under arrest?
“A. Yes, he was.”
The above-quoted testimony suggested to the jury that defendant possessed a weapon when apprehended by the police officers just as clearly as if the knife actually seized from defendant had been introduced into evidence, as the jury’s question all too pointedly establishes.
Similarly, the testimony of Officer Calise totally emasculated the court’s pretrial ruling suppressing Mr. Pimentel’s showup identification of defendant. Officer Calise testified:
“Q. Did there come a time that after you placed [defendant] under arrest that you went back to 213 East Kings Bridge Road, the bodega?
“A. Yes.
“Q. Did you meet Mr. Pimentel? Did you eventually meet Mr. Pimentel?
“A. Yes.
“Q. Did you see him at the bodega either inside or out front?
“A. Yes.
“Q. About what time was it when you got over to the bodega and met Mr. Pimentel?
“A. Approximately about five minutes after eleven.
“Q. So it took you about five minutes to get back to the bodega?
“A. That’s correct.
“Q. From [the] construction site?
“A. Yes.
*431 “Q. And then did there come a time that you went to the precinct right after you were at the bodega?
“A. Yes.
“Q. And was the defendant brought to the precinct?
“A. Yes, he was.
“Q. Was Mr. Pimentel at the precinct?
“A. Yes, he was.”
The majority’s suggestion that it is “speculative” to conclude from Officer Calise’s testimony that defendant had been identified by Mr. Pimentel is, to say the least, farfetched. What other reasonable inference could be drawn in this uncomplicated robbery case? Only the victim witnessed the crime. Only 10 minutes later two police officers apprehended the suspect at a nearby location. Within five minutes thereafter they returned the suspect to the bodega. When the victim was confronted with that suspect, either the right man or the wrong man had been apprehended. The jurors, who cannot be presumed, absent Officer Calise’s testimony, to have the sophistication the majority attributes to them concerning pretrial identifications, could draw only one inference from that scenario. If the wrong man, why would he not be released? If the right man, why would he not be taken to the precinct and booked?
In short, there can be no serious issue concerning the reach of the exclusionary rule to the facts of this case. The majority’s contrary ruling brings to mind Judge Cardozo’s statement, made in another context in Beatty v Guggenheim Exploration Co. (225 NY 380, 388): “What is excluded by one act, is restored by another. You may put it out by the door; it is back through the window.” To permit evidence put out through the exclusionary rule’s door to come back in through the window of the Trial Judge’s erroneous rulings is to make a mockery of the Fourth Amendment. Effectuation of its mandate requires deterrence riot only of improper police conduct but of improper, even if not malicious, prosecutorial tactics as well.
The order of the Appellate Division should be reversed and a new trial ordered.
*432 Judges Jasen, Gabrielli and Jones concur with Judge Wachtler; Judge Fuchsberg concurs in a separate opinion; Judge Meyer dissents and votes to reverse in an opinion in which Chief Judge Cooke concurs.
Order affirmed.