[Cite as *Teeter v. Teeter*, 2014-Ohio-1471.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BONNIE TEETER, | ) | |
| | ) | CASE NO.   13 CA 887 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| GARY TEETER, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas Court,
                               Case No. 129009.

JUDGMENT:                      Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant:       Attorney Thomas Himmelspach
                               4864 Douglas Circle, NW
                               P.O. Box 35459
                               Canton, Ohio  44735-5459

For Defendants-Appellees:      Attorney Sean Smith
                               70 Public Square
                               P.O. Box 252
                               Carrollton, Ohio  44615
                               (For Gary and Denise Teeter)

                               Attorney Lyle Brown
                               41 South High Street, Suite 2200
                               Columbus, Ohio  43215
                               (For R.E. Gas Development LLC)

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                               Dated:  March 31, 2014

VUKOVICH, J.

{¶1} Plaintiff-appellant Bonnie Teeter appeals the decision of the Carroll County Common Pleas Court granting summary judgment in favor of defendants-appellees Gary and Denise Teeter and the determination that the grant of summary judgment renders the claims against defendant-appellee R.E. Gas Development, LLC moot.

{¶2} This case involves a tract of land and primary residence that was owned by Bonnie and her husband Joseph Teeter. Prior to Joseph Teeter's death, Bonnie and Joseph transferred this property to appellees Gary and Denise Teeter. Bonnie claimed that Gary and Denise were to hold the property in trust for her until she wanted it back. She claimed that the transfer was done to protect the property from any potential medical or nursing home bills; Joseph had some serious medical issues at the time of the transfer and his health was deteriorating. She asked the trial court to impose the equitable remedy of a constructive trust. Gary and Denise contend that the transfer was Gary's inheritance from his father Joseph. The primary issue raised in the summary judgment motions concern what the purpose was for the transfer of the land and residence: was it Gary's inheritance, or was he to hold the property for Bonnie until she wanted it back? The trial court found that there was no genuine issue of material fact and that the equitable remedy of a constructive trust was not available. Thus, it granted summary judgment for Gary and Denise. We are asked to review the propriety of that decision.

{¶3} This case presents two versions of what may have transpired between the parties. The burden of proof to obtain the equitable remedy of a constructive trust is on Bonnie and she must prove her case by a clear and convincing standard of proof. However, given the nature of this case, i.e. the fact that it is a he said/she said type of case, she could meet this burden if the trier of fact believes her. Consequently, she presented sufficient facts to create a genuine issue of material fact and to survive summary judgment. Therefore, for those reasons and the ones expressed below, the judgment of the trial court is hereby reversed and the matter is remanded to the trial court for further proceedings.

Statement of Facts and Case

{¶4} Appellant Bonnie married Joseph Teeter in 1988. Joseph had four adult children from a previous marriage, one of which is appellee Gary Teeter. Between 1990 and 1992, appellant and Joseph purchased roughly 20 acres of land on Waynesburg Road in Carrollton, Ohio. Sometime between 1990 and 1992, on the 16 acre parcel located at 22 Waynesburg Road, they built a house at cost for about $120,000. Joseph's sons, Jerry and appellee Gary, were the contractors. That house and 13 of the 16 acres were sold for $175,000. Bonnie Depo. 50. In 2003, prior to the sale of 22 Waynesburg Road, Bonnie and Joseph began building a house on the 8 and half acres located at 44 Waynesburg Road. Appellee Gary Teeter was the contractor and built that house for cost. One of the reasons for building this house was Joseph's deteriorating health. He had a cyst inside his spinal cord at the base of his brain. He also had Parkinson's disease and cancer.

{¶5} On October 15, 2003, Joseph and Bonnie Teeter, as husband and wife, deeded the 44 Waynesburg Road property to themselves in joint and survivorship. Then on November 3, 2003, Joseph and Bonnie Teeter deeded the 44 Waynesburg Road property to appellees Gary and Denise Teeter.

{¶6} According to Bonnie, the purpose of deeding the property to Gary and Denise Teeter was to protect the asset from any potential medical and nursing home bills that may be acquired by Joseph during his health problems. Appellee Gary, on the other hand, claims that his dad told him that the property was his inheritance; he was not holding it for Bonnie to protect the asset.

{¶7} Joseph Teeter died in December 2005. In 2011, the shale boom occurred in Carroll County. Appellee Gary Teeter signed a lease with RE Gas Development for the property located at 44 Waynesburg Road. 06/25/11 Lease. Bonnie asked for the money from the lease to go on a cruise. Appellee Gary would not give her any of it claiming that it was his money. Bonnie then asked for the property to be conveyed back to her. Appellee Gary refused.

{¶8} Thereafter, appellant Bonnie filed the instant action asserting a constructive trust. She also named RE Gas Development as a defendant and sought

to have the past monies received from the lease to be directed to her and for all future royalties to be directed to her.

{¶9} Following answers and discovery, appellees moved for summary judgment. Bonnie filed a motion in opposition. The trial court granted summary judgment for Gary and Denise. As for appellee RE Gas Development, the trial court determined that Bonnie's claims against it were moot since Gary and Denise were the rightful owners of the property. Therefore, it dismissed Bonnie's complaint against RE Gas Development.

{¶10} Bonnie appeals.

<u>First Assignment of Error</u>

{¶11} "The trial court erred in granting summary judgment to defendants Gary Teeter and Denise Teeter."

{¶12} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Civ.R. 56(C), provides that summary judgment is appropriate when, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club,* 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201 (1998).

{¶13} It is undisputed that Bonnie and Joseph deeded the property at 44 Waynesburg Road to appellees Gary and Denise Teeter. The disagreement in this case is as to why Bonnie and Joseph did this and the effect that this action had. As aforementioned, according to Bonnie, there was an oral agreement between Gary and Joseph that if Bonnie ever needed the property back that Gary and Denise were to deed it back to her. Bonnie contends that Joseph was worried that with his failing health he would have to go into a nursing home, that their funds would be depleted, and the nursing home would "go after" the house to recoup the cost of the nursing home. According to her, Joseph did not want her left without a house to live in. Gary disagrees with her version and contends that the property was deeded to him as his inheritance. He stated that while there may have been a mention of the nursing

home when talking about deeding the property to Gary and Denise, that was just a smoke screen to do it in this manner without having to deed the property to Joseph's other son Jerry.

**{¶14}** The statute of frauds, codified in R.C. 1335.04 indicates that:

No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.

R.C. 1335.04.

**{¶15}** Thus, an agreement to re-convey would be required to be in writing. Bonnie concedes that the alleged re-conveyance agreement was oral and that there is no written instrument indicating that the property would be re-conveyed back to Bonnie and/or Joseph upon them asking.

**{¶16}** There are exceptions to the statute of frauds. Two such exceptions are promissory estoppel and a constructive trust. *Hunter v. Green*, 5th Dist. No. 12-CA-2, 2012-Ohio-5801, ¶ 37. The Ohio Supreme Court has defined a constructive trust as follows:

"* * * [A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice. * * * " [76 American Jurisprudence 2d (1975) 446, Trusts, Section 221]

In *Beatty v. Guggenheim Exploration Co.* (1919), 225 N.Y. 380, 122 N.E. 378, we find the following pertinent commentary by Justice Cardozo, at pages 386 and 389, 122 N.E. 378:

> "* * * A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula."

*Ferguson v. Owens*, 9 Ohio St. 3d 223, 225-226, 459 N.E.2d 1293 (1984).

**{¶17}** A constructive trust is considered a trust because "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 18 (2006), quoting Ferguson at 225, quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 389, 122 N.E. 378 (1919). That said, it has been explained that a constructive trust is imposed "not because of the intention of the parties but because the person holding the title to property would profit by a wrong, or would be unjustly enriched if he were permitted to keep the property." *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St. 3d 118, 2002-Ohio-3748, 772 N.E.2d 105, ¶ 60 (2002), quoting Restatement of the Law, Restitution, Section 160, Comment *b.*

**{¶18}** Although a constructive trust is usually invoked when the property has been acquired by fraud, a constructive trust may also be imposed against the principles of equity that the property be retained by a person even though the property was acquired without fraud. *Id.* at 226; *Hunter* at ¶ 40; *Champ v. Lockhart*, 7th Dist. No. 2000CO58, 2001 WL 1085312.

**{¶19}** There is evidence that Gary and Denise were to hold the property for Bonnie to protect it from a nursing home. An affidavit from Jerry Teeter is attached to Bonnie's motion in opposition to summary judgment. In that affidavit, Jerry avers that Joseph told him that he was going to put the house in Gary's name to protect it from the nursing home. Jerry contends that he was never told that it was part of Gary's inheritance. Jerry Affidavit paragraphs 4-6. He indicated he was always under the

impression that Gary was holding the property for Bonnie. Jerry Affidavit paragraph 7. He indicated that in the past he held property for his father that his father thought he might lose through a divorce. Jerry stated that although he held the property for more than 8 years he deeded it back when his father asked and that his dad, Joseph, believed that Gary would do the same thing with the 44 Waynesburg Road property. Jerry Affidavit paragraph 18.

{¶20} Also attached was an affidavit from Bonnie in which she avowed that she was present when Joseph asked Gary to hold the property in his name to protect it from being taken for nursing home bills, that it was to assure that she would always have a place to live, and if she needed the property back Gary was to deed it back to her. Bonnie Affidavit paragraph 4. She indicated that this arrangement was "okay" with Gary as long as it did not cost him anything. Bonnie Affidavit paragraph 4. Bonnie stated that she did not intend to give that property to Gary and Denise as their inheritance and if she had known that they would have been legally able to sell that property and not permit her or Joseph in the property, or that he would keep the property and not deed it back when requested, she would not have signed the deed. Bonnie Affidavit paragraph 5-6. She further indicated:

> I was 62 years old when Joseph died. He was 74. When I signed the deed to the property, I was 60 years old. I would not knowingly give up my rights to continue to live in the house that my husband and I had built. Joseph was 10 years older than me, and very ill. Unless something totally unforeseen happened, Joseph in all probability, would die before me. Joseph was realistic and knew this also. He wanted to protect that house for me and he assured me transferring the property to Gary would do that.

Bonnie Affidavit paragraph 8.

{¶21} Likewise, during her deposition, she explained about the potential nursing home bills as being a reason for deeding the property to Gary and Denise and being scared that the nursing home would take the house to pay for the bills. Bonnie Depo. 65. She admitted, however, that in her answers to the interrogatories

that she stated the verbal agreement was just between Joseph and Gary. Bonnie Depo. 65. She explained during her deposition that that was a misstatement and that she and Denise were there, but they did not talk, rather it was Joseph and Gary who did all the talking. Bonnie Depo. 68. She also indicated that if the house was still in Gary's name when she died it was his inheritance. She even went so far as to say that she never thought of asking for it back until after Gary started telling her what she could and could not do on the property. Bonnie Depo. 70, 73.

{¶22} In looking at the facts and deposition of this case, it does not appear that the sole reason for her wanting the property back was because Gary was telling her what she could or could not do on the property. As aforementioned, the property was deeded to Gary and Denise in 2003, Joseph died in 2005. As a result of the shale boom, an oil and gas lease was signed by Gary in 2011 and then sometime after that Bonnie asked for some of the money from that lease so she could go on a cruise. Gary refused to give her the money. Bonnie believed that the money was hers because in her mind the property was also hers. Had Gary given her the money, she admitted she probably would not have asked for the property back at that time.

{¶23} As aforementioned Gary disagrees with Bonnie as to the effect and why the property was deeded to him and his wife. He contends that he was not holding the property for Bonnie. Rather, he has maintained that his father, Joseph, told him this property was his inheritance. Gary Depo. 35. During his deposition, it was explained that although Gary was in the business of building houses, he built the 44 Waynesburg Road house (and even the portion of 22 Waynesburg Road house that he built) for cost. Therefore, he claimed that his father was giving him the 44 Waynesburg Road property and house as his inheritance, i.e. as a means to pay him for his work. Gary admitted that Joseph might have made some excuse about the nursing home, but Gary claimed that it was "just a smoke screen and a side reason to place this house in my name." Gary Depo. 35-37. He indicated that it was his understanding that when this property was deeded to him he could have kicked his father and stepmother out of the house, though he said he would not do that to his

dad. Gary Depo. 48-49. Gary admits that Bonnie has paid the taxes, most of the upkeep, and utilities for the property and has paid for some of the improvements to the property. He also acknowledges that she has not paid a rental fee.

**{¶24}** Given those facts, we must determine whether the trial court erred when it granted summary judgment for Gary and Denise and effectively determined that Bonnie would be unable at trial to prove that she was entitled to the equitable remedy of a constructive trust.

**{¶25}** In 2012, the Third Appellate District affirmed a trial court's imposition of a constructive trust. *Gallogly v. Watson*, 3d Dist. No. 14-12-12, 2012-Ohio-3778. In that case, Myron Gallogly and Roger Watson, "who were good friends and had a strong mutual trust in one another, agreed to develop property owned by Myron and Priscilla." *Id.* at ¶ 2. The agreement was that Myron would contribute the Gallogly property, excluding Priscilla Gallogly's residence, and manage the development. Roger would provide the financing for the project. As things proceeded to move forward, Roger and Myron had to acquire a letter of credit for just over $1,000,000. Roger was unable to obtain the further financing that he originally thought he would be able to obtain. The bank would not extend a letter of credit for the amount sought unless Priscilla's residence was transferred to the Roger Watson Trust along with the Gallogly property. Therefore, after discussing the matter, Myron and Priscilla transferred the Gallogly property and Priscilla's residence to the Roger Watson Trust. At the time of the transfer, assurances were made to Priscilla "that Roger had no intention of taking Priscilla's residence, that the residence still remained hers, and that the transfer was just for 'business purposes.'" *Id.* at ¶ 4. The deed recording the transfer was recorded on June 4, 2007. Unfortunately, Roger died unexpectedly just over a month later. Todd Watson, Roger's son, assumed Roger Watson's position as trustee, and attempted to carry through with his father's wishes to fund the project. However, eventually that became financially impractical so the funding ceased and the Gallogly property and Priscilla's residence went into foreclosure leading to the filing of this action.

**{¶26}** As a result, Myron and Priscilla filed a complaint against, among others, Todd Watson individually and Todd Watson as successor Trustee of the Roger L. Watson Trust alleging breach of fiduciary duty against Todd as trustee of the Watson Trust, requesting the imposition of a constructive trust, quiet title of the subject property, and unjust enrichment of the Watson Trust.

**{¶27}** Following trial, the court found that given the circumstances, the imposition of a constructive trust was appropriate to put the parties in the position that they bargained for. *Id.* at ¶ 17. The appellate court affirmed that ruling. At trial, there was testimony that evinced that the parties never intended the residence to be part of the project. *Id.* at ¶ 18. The original contract that indicated that the residence was not part of the contract was introduced as evidence. Also, a letter from Roger to Myron indicated that Roger considered the house to be Myron and Priscilla's even though it was deeded to his trust. This letter was prepared shortly before Roger's death. Consequently, the appellate court found that there was "clear and convincing evidence to support the finding that Priscilla's residence was not intended to be part of the project when she signed the deed over to the Roger Watson Trust, especially when considering Roger's letter weeks prior to his death." *Id.* at ¶ 25.

**{¶28}** The foregoing case illustrates when a constructive trust can be imposed and what type of evidence can produce clear and convincing evidence for the imposition of a constructive trust.

**{¶29}** Here, we have a transfer of a deed for purposes of protecting a property from potential medical/nursing home debt. It could be deemed to be somewhat akin to the *Gallogly* situation where the property was used to secure a letter of credit. That said, admittedly, in the case at hand, we do not have the type of evidence that was presented in *Gallogly*. Rather, we have a he said/she said type of situation.

**{¶30}** This presents us with the situation of whether or not what was provided to the trial court here is enough to survive summary judgment. As aforementioned, case law on constructive trusts indicates that the party seeking the judicial recognition of either a constructive or resulting trust bears the burden of producing clear and convincing evidence justifying it. *Lynch* at paragraph three of the syllabus.

Thus, Bonnie has the burden of proof and we are looking to see if there is clear and convincing evidence that the property at issue here was intended to remain Bonnie's, despite the deed, or if it was intended to transfer to Gary and Denise upon the recording of the deed.

**{¶31}** In looking at cases that have the higher standard of proof, meaning that a clear and convincing standard rather than a preponderance of the evidence, the Ohio Supreme Court has considered the clear and convincing standard when reviewing summary judgment awards. *Jackson v. Columbus*, 117 Ohio St. 3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11-12 ("'In ruling upon defendant's motion for summary judgment in a libel action brought by a public official, the court shall consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff to determine whether a reasonable jury could find actual malice with convincing clarity.'); *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St. 2d 116, 121, 413 N.E.2d 1187 (1980) ("In ruling on such a motion, the court is limited to examining the evidence 'taking all permissible inferences and resolving questions of credibility in plaintiff's favor to determine whether a reasonable jury acting reasonably could find actual malice with convincing clarity.'").

**{¶32}** On one hand, it does not seem like appellant can meet this clear and convincing standard with the minimal evidence she produces. While she claims that she always considered the property hers and Gary was only holding it until she asked for it back, some of her statements during the deposition do not necessarily confirm that those were her real thoughts. For instance, she said that the property was Gary's inheritance if she died while it was still in his name. Bonnie Depo. 70. If he was holding it in trust for her, then when she died it would be divided among her heirs. By admitting that he would receive it when she died if it was still in his name seems to be admitting that she only had a life estate. She also indicated that she had no intention of asking for it back, until he would not give her the money from the gas lease. Bonnie Depo. 73.

**{¶33}** Furthermore, although it is true that Attorney Rumbaugh, who prepared the deed, indicated that given the fact that Joseph and Bonnie remained in the

property after it was deeded and paid the taxes on it, that there probably was some arrangement, he admitted that he did not have actual knowledge that there was an arrangement, such as a lease, life estate or implied contract of reverter. Rumbaugh Depo. 51-52. This may all indicate that she cannot meet her burden of proof.

**{¶34}** On the other hand, as the Ohio Supreme Court explained in *Jackson*, even though we are applying a heightened "convincing clarity" standard, we still must construe all evidence in this case most strongly in favor of the nonmoving party. *Jackson* at ¶ 11. In this instance, that is Bonnie. Thus, in this case, it is ultimately Bonnie's word against Gary's word. Because this is a he said/she said situation, it is a credibility determination. If the trier of fact does not believe Bonnie then she has not met her burden of proof. However, if the trier of fact does believe her then she can meet her burden of proof. It does not matter if the trial court or even if this court believes Bonnie, under the summary judgment standard of review she is entitled to have the evidence viewed in the light most favorable to her.

**{¶35}** Accordingly, given the standard of review and the nature of the evidence presented in this case, we hold that the trial court erred when it granted summary judgment to Gary and Denise. This assignment of error has merit.

<u>Second Assignment of Error</u>

**{¶36}** "The trial court erred in dismissing appellant's claims against R.E. Gas Development, LLC as moot based upon the grant of summary judgment in favor of Appellees Gary Teeter and Denise Teeter."

**{¶37}** In the complaint, Bonnie claimed that RE Gas Development failed to determine that she was the person in possession of the real estate prior to entering into the lease with Gary and Denise. She sought to recover from RE Gas Development the roughly $28,000 that it paid to Gary and Denise pursuant to the terms of the lease and to restrain it from making further payments to Gary and Denise under the lease. Based on the trial court's decision that Bonnie was not entitled to the imposition of a constructive trust and that she was not the owner of the real estate, the trial court determined that the cause of action against RE Gas

Development was rendered moot. Accordingly, it granted judgment in RE Gas Development's favor and dismissed the compliant against it.

**{¶38}** As stated above, the trial court inappropriately granted summary judgment to Gary and Denise. Thus, the trial court's basis for finding that the cause of action against RE Gas Development is moot is no longer viable. Accordingly, that determination is also reversed and the matter is remanded to the trial court to determine whether summary judgment should be granted to RE Gas Development. The matter is remanded because the trial court did not address the merits of whether there is a genuine issue of material fact or whether RE Gas Development was entitled to judgment as a matter of law. This gives the trial court the opportunity to determine the merits of any summary judgment motion filed regarding this claim. This assignment of error has merit.

### Conclusion

**{¶39}** For the foregoing reasons, the judgment of the trial court regarding the grant of summary judgment in favor of appellees Gary and Denise Teeter and RE Gas Development is reversed and the matter is remanded for further proceedings.

Donofrio, J., concurs.
DeGenaro, P.J., concurs.