2021 PA Super 104

| CHRISTINE BIROS, AN INDIVIDUAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| U LOCK INC., A PENNSYLVANIA CORPORATION | |
| Appellant | No. 1841 WDA 2019 |

Appeal from the Judgment Entered January 6, 2020
In the Court of Common Pleas of Westmoreland County
Civil Division at No: 17 CJ 04886

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

OPINION BY STABILE, J.:                    **FILED: MAY 21, 2021**

Appellant, U Lock Inc., appeals from the January 6, 2020 judgment entered in favor of Appellee, Christine Biros.  We affirm.

The record reflects that, in 2014, Erik Martin agreed with the Estates of Nicholas Schur, Anne Sarris, Alex Schur, and Michael Schur (the "Estates") for the purchase of real property (the "Property") for $325,000.  The agreement of sale listed the buyer as Erik Martin, incorporator of ULock, Inc.  Martin failed to appear at the scheduled closing.  A subsequent closing was scheduled for July 16, 2015.  One day prior, on July 15, 2015, Appellant filed articles of incorporation.

At the closing, Appellee appeared with four cashier's checks worth approximately $309,000.00 in total.[1] In a brief, handwritten note which provided for repayment on terms to be set by August 16, 2015, Appellant agreed to treat the funds as a loan from Appellee. Appellee testified that she made the loan at the behest of her brother, John Biros, and that she never intended the money to be an investment in Appellant and she did not intend to own shares in Appellant. Kash Snyder signed the handwritten agreement on behalf of Appellant. The parties ultimately never agreed to the terms of repayment, though Appellant does not dispute its outstanding debt to Appellee.

At the closing, Appellee remitted the funds directly to the Estates. The Estates issued a settlement statement listing the buyer of the Property as ULock, Inc. Kash Snyder signed the settlement statement as director of Appellant. His brother George Snyder, also of Appellant, accepted delivery of the deeds (the "2015 Deeds"). George Snyder believed Appellee and John Biros would be partners in the business venture; he did not expect Appellee to request a repayment agreement on the day of the closing.

On July 17, 2015, the day following the closing, the Pennsylvania Secretary of State issued a letter rejecting Appellant's articles of incorporation because of an error in the docketing statement. The letter provided that

---

[1] The Estates had already received the remainder of the balance in hand money.

Appellant could retain the July 15, 2015 date of incorporation so long as it corrected the error within thirty days. Appellant failed to make a timely correction, but later refiled its articles of incorporation. The Secretary of State accepted the new articles of incorporation on September 4, 2015. On February 13, 2018, while this action was pending, the Estates issued new deeds to Appellant (the "2018 Deeds"). Appellant filed the 2018 Deeds with the recorder of deeds on March 1, 2018.[2]

On May 5, 2017, Appellee sent a letter to George Snyder designating the outstanding balance of the loan as $385,939 and demanding, among other things, repayment at 9% interest with a balloon payment of the outstanding balance by June 1, 2022. On October 4, 2017, Appellee filed a complaint against Appellant and the Estates alleging and seeking a declaratory judgment that the July 2015 Deeds were void *ab initio*, and alleging equitable causes of action to convey title, quiet title, and for an accounting. The Estates were later dismissed from the action with the agreement to place blank deeds to the Property in the court registry. Appellant filed an answer and new matter, followed by several amended answers in response to Appellee's preliminary objections.

On April 1, 2019, Appellee filed a praecipe to schedule trial. Trial commenced on April 29, 2019, and the trial court entered a declaration that

---

[2] According to Appellee's opening argument, the 2018 Deeds were "subject by the language of the deeds to *Lis Pendens*[.]" N.T. Trial, 4/29/19, at 16.

the 2015 Deeds were void *ab initio*. The court also entered judgment favor of Appellee on her action to compel conveyance of title. The court found that Appellant would be unjustly enriched by maintaining its ownership in the Property with no ability to repay Appellee the money she lent for its purchase. Thus, the court found that Appellant held the property in constructive trust, and it directed conveyance of the Property to Appellee.[3]

In its post-trial motions, Appellant argued that Appellant's declaratory judgment action as to the 2015 Deeds was moot, given the 2018 Deeds and the lack of any challenge as to their efficacy. Appellant also argued that indispensable parties were absent, given Appellee's assertions: (1) that the 2015 Deeds were void *ab initio,* and (2) that Appellant was not the valid owner of the Property. Also, Appellant argued that Appellee did not plead constructive trust and unjust enrichment in her complaint and did not argue for it until the proposed conclusions of law she submitted at the conclusion of trial. Appellant argued that Appellee's unsecured loan did not entitle her to any of the remedies the trial court granted, and that she had an adequate remedy at law.

The trial court conducted a hearing on the post-trial motions on November 8, 2019. The trial court denied Appellant's post-trial motions by

---

[3] The trial court also held that the quiet title action was moot, and that entry of an accounting was not appropriate in an action at equity.

order of December 9, 2019. The verdict was reduced to judgment on January 6, 2020. We now turn to the issues Appellant raises in this timely[4] appeal.

On appeal from a non-jury trial, we are mindful of the following:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664–65 (Pa. Super. 2014)

The first three of Appellant's six assertions of error are related, and we consider them together.

I.      Whether the court lacked jurisdiction to grant declaratory and equitable relief as to the moot issue regarding the [2015 Deeds] considering the new [2018 Deeds]?

---

[4] Appellant filed its notice of appeal prematurely before the entry of judgment. We will treat Appellant's premature appeal as one from the January 6, 2020 judgment and entertain jurisdiction. *See Johnston the Florist v. TEDCO Constr. Corp.*, 657 A.2d 511, 514-15 (Pa. Super. 1995) (holding that this Court will entertain an appeal where the notice of appeal predates the entry of judgment).

    II.     Whether the court lacked jurisdiction as a result of the failure to join indispensable parties?

    III.    Whether the court erred by finding that filing mistake as to [Appellant's] corporation papers warranted finding deeds void *ab initio* and transferring property to an unsecured creditor? `

Appellant's Brief at 5.

As set forth above, Appellant filed its articles of incorporation the day before the 2015 closing, but the Commonwealth Secretary of State rejected them. Appellant failed to cure the defect in time, and so its official date of incorporation, September 4, 2015, postdates the transaction in which the Estates transferred the Property to Appellant. On that basis, Appellee asked the trial court to declare the 2015 Deeds void *ab initio*, and the court did so. Appellant argues that any defect in the 2015 Deeds was cured and rendered moot when the Estates issued the 2018 Deeds. Appellant also argues that either 1) it was a *de facto* corporation pursuant to 15 Pa.C.S.A. § 504[5] on July

_____

[5] That section provides:

> Where heretofore or hereafter any act has been or may be done or any transfer or conveyance of any property has been or may be made to or by any corporation created or intended to be created under any statute supplied or repealed by this part, in good faith, after the approval of the articles or application for a charter or issuance of letters patent but without the actual recording of the original papers with the endorsements thereon, or a certified copy thereof, in the office of any recorder of deeds, as provided in such statutes then in force, the acts, transfers and conveyances shall nevertheless be deemed and taken to be valid and effectual for all purposes, regardless of the omission to record

15, 2015, the date of transfer of the 2015 Deeds, or 2) Appellee failed to join indispensable parties—namely the officers, directors, and/or shareholders of the corporation to be.

"An issue before a court is rendered moot when a determination is sought in a matter which, when rendered, cannot have any practical effect on the existing controversy." ***Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 59 (Pa. Super. 2016). On consideration of the facts before us, we conclude that the efficacy of the 2015 Deeds can have no effect on the ultimate outcome of this case. Appellant has not challenged the efficacy of the 2018 Deeds. Appellant cites no legal authority preventing the Estates from issuing the 2018 Deeds subject to *Lis Pendens*. Furthermore, the trial court accepted the legitimacy of the 2018 Deeds: "Even accounting for the *void ab initio* status of the [2015 Deeds], the corrective [2018 Deeds], show legal title in the [Property] belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the [Property] since July 16, 2015 […]." Trial Court Opinion, 8/23/19, at 5. The 2018 Deeds did not prejudice Appellant's cause of action. In some ways, they facilitated it. Because of the 2018 Deeds, there

---

the original papers with the endorsements thereon, or a certified copy thereof, as heretofore required by such statutes. Every such corporation shall be deemed and taken to have been incorporated on the date of approval of its articles or application for a charter or on the date of issuance of its letters patent, whichever event shall have last occurred.

15 Pa.C.S.A. § 504.

can be no dispute that Appellant is the proper party in interest, and therefore the trial court had jurisdiction over Appellant's action for conveyance of title. Likewise, we have no need to determine whether Appellant, as of the July 15, 2015 closing, met the definition of a *de facto* corporation. In short, the efficacy—or lack thereof—of the 2015 Deeds has no bearing on the relief the trial court ultimately ordered—imposing a constructive trust on the Property and ordering its conveyance to Appellee. Thus, we come to Appellant's fourth assertion of error, and the heart of the matter:

> IV. Whether the court erred in granting judgment and transferring ownership of the [P]roperty through a constructive trust when: (a) No allegations, facts, or theories or demand for for [sic] establishing a constructive trust were contained in the complaint or at trial; (b) No setting of the terms and conditions of the loan occurred by the trial court; (c) Transferring the [P]roperty under a constructive trust created an unjust enrichment and windfall; (d) Ordinary causes of action and a money judgment would have resolved the controversy?

Appellant's Brief at 5.

The following law governs the imposition of a constructive trust:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

*Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. 2002) (citations omitted), *appeal denied*, 820 A.2d 162 (Pa. 2003).

- 8 -

"There is thus no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is whether or not unjust enrichment can thereby be avoided." *Stauffer v. Stauffer*, 351 A.2d 236, 241 (Pa. 1976). "This Court has repeatedly cited with approval the oft-quoted language of Justice (then Judge) Cardozo in *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 380-81 (N.Y. 1919):

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee … A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.

*Id.* "To introduce the issue of a constructive trust a plaintiff must allege that the putative trustee had legal title to the property, and that were he to retain it, he would be unjustly enriched." *Buchanan v. Brentwood Fed. Sav. and Loan Ass'n*, 320 A.2d 117, 127 (Pa. 1974).

Appellant argues that the trial court's imposition of a constructive trust must fail because Appellee did not specifically request the imposition of a constructive trust in her complaint. We disagree. In her complaint, Appellee alleges that she paid for the Property and that deeds were delivered to Appellant. Complaint, 10/4/17, at ¶¶ 10-11. In her cause of action for declaratory judgment, Appellee asked for a declaration that she was the equitable owner of the property. *Id.* at ¶ 21(v). Further, in her cause of action for equitable conveyance of title, Appellee alleged that she paid the

Estates for the Property, that Appellant paid no money toward the purchase of the Property, that Appellant never reimbursed Appellee for the payment, and that Appellee, therefore, was entitled to own the Property in fee simple. *Id.* at ¶¶ 22-29. Thus, while the words "unjust enrichment" and "constructive trust" are absent from Appellee's complaint, she very clearly pled the elements of a constructive trust in accord with **Buchanan**, and the parties litigated those elements at trial.[6] Indeed, Appellant concedes that Appellee paid for the Property; that she deserves to be repaid; and that Appellant has not repaid her.

Further, the record supports the trial court's finding that Appellant lacks the financial wherewithal to repay Appellee, as evidenced in this exchange between Appellant's counsel and George Snyder:

> Q. Do you agree that you still owe this money, or U Lock, or someone, owes this money to [Appellee]?
>
> A. Yes, I do.
>
> Q. Are you attempting to try and make arrangements to pay that back?
>
> A. Well, yes. We could at any time that the *Lis Pendens* – **the deed makes it difficult.**
>
> Q. Okay. Are you willing to attempt to get that money together to pay her?
>
> A. Absolutely.

---

[6] **See also**, **Marion v. Bryn Mawr Tr. Co.**, ___ A.3d ___ (Pa. Super. 2021) (looking at the substance of a cause of action, rather than its title, to determine whether the plaintiff alleged a valid cause of action).

Q. Do you have people that want to become involved in your corporation, after this lawsuit is over, that would give you money to be able to pay her off?

A. A whole list of people are very interested.

N.T. Trial, 4/29/19, at 49 (emphasis added). The trial court could reasonably find from the bolded portion of this passage that Appellant could not, without alienating the Property, repay Appellee. At other times during trial, the trial court heard evidence that Appellant had limited resources, that it was not run in accordance with applicable corporate law, and that it had never filed a corporate tax return.[7] From this, the trial court could reasonably reject George Snyder's self-serving testimony about his "whole list" of wiling investors waiting for this litigation to go away.

In summary, the record supports the following conclusions: 1) Appellee paid for the Property on behalf of Appellant; 2) Appellee expected repayment from Appellant; 3) Appellant never repaid Appellee; 4) Appellee had no adequate remedy at law because Appellant lacked resources, other than the Property, with which to compensate Appellee. There was no dispute that Appellee was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to Appellee

_____

[7] George Snyder testified that Appellant never filed tax returns. N.T. Trial, 8/29/19, at 52. He was unsure whether Appellant ever issued stock certificates to its 800 shareholders, and Appellant never sent an Internal Revenue Service Form 1099 to any shareholder. *Id.* at 51-52. Appellant maintained no insurance on the Property. *Id.* at 52. George Snyder believed Appellant had corporate bylaws and minutes, but Appellant was unable to produce them in discovery. *Id.* at 54.

or entering judgment for Appellant and trusting that the conclusion of this litigation would result in an influx of cash to Appellant with which it would, finally, repay its debt. The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder.

That Appellant alleged causes of action for a declaratory judgment (including a declaration that she is the owner of the Property) and equitable conveyance of title, rather than for a constructive trust, does not alter our result. As we have explained, the relief the court imposed is in accord with the facts alleged in the complaint, the relief sought in the complaint, and the issues litigated at trial.

For all the foregoing reasons, we discern no error in the trial court's imposition of a constructive trust on the Property and its direction that ownership thereof be transferred to Appellee.

In its fifth assertion of error, Appellant claims the trial court erred in scheduling a "snap trial" before the completion of discovery, and in denying Appellant's motion to continue the trial. Appellant's Brief at 5. The trial court acknowledges that its decision to schedule the trial was not in accord with the Westmoreland County Rules of Civil Procedure. The court reasoned, however, that Appellant suffered no prejudice from its action. The trial court cited Rule 126 of the Pennsylvania Rules of Civil Procedure, which permits it to "disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. No. 126. In its brief, Appellant complains that it

was deprived of the opportunity to test Appellee's claims through discovery, but Appellant fails to specify any additional discovery it would have sought. Likewise, Appellant does not explain precisely how the scheduled order hampered its ability to defend itself in this case. For these reasons, Appellant is not entitled to relief on this issue.

In its sixth and final assertion of error, Appellant claims the trial court erred in sustaining Appellee's preliminary objection to scandalous and impertinent material set forth in Appellant's answer and new matter to Appellee's complaint. Appellant alleged that the funds Appellee used to pay for the property were derived from illicit gambling activity. Rule 1028(a)(2) permits a preliminary objection for "failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter[.]" Pa.R.C.P. No. 1028(a)(2). "In order to be scandalous or impertinent, 'the allegation must be immaterial and inappropriate to the proof of the cause of action.'" **Breslin v. Mountain View Nursing Home, Inc.**, 171 A.3d 818, 822 (Pa. Super. 2017) (**quoting Common Cause/Pennsylvania v. Commonwealth of Pennsylvania**, 710 A.2d 108 (Pa. Commw. 1998)). We will reverse an order sustaining a preliminary objection only if the trial court committed an error of law or abuse of discretion. **Id.** at 822.

The trial struck the allegation as immaterial and inappropriate to this case of action. We agree. Whatever the source of Appellee's funds, she pled and proved that she paid for the Property expecting repayment, and that

Appellant has remained in possession and enjoyment of the Property ever since, without any apparent ability to make repayment. Thus, the source of Appellee's funds has no obvious bearing on the equities between the parties to this case. We discern no error of law or abuse of discretion in the trial court's decision.

For all the foregoing reasons, we affirm the trial court's judgment in favor of Appellee.

Judgment affirmed.

Judge King joins the opinion.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2021