OPINION OF THE COURT
Gerard E. Maney, J.
Following a bench trial on March 19 through 20, 1997, in and for the Supreme Court, Albany County, before the Honorable Gerard E. Maney, Justice of the Family Court, acting Justice of the Supreme Court, and after submissions by the parties of proposed findings of fact and conclusions of law, a decision and order was made, dated May 22, 1997, in which plaintiff’s action for divorce on the grounds of cruel and inhuman treatment was granted following the parties’ 51-week marriage. Thereafter, the court requested and counsel did submit written memoranda on the issue of equitable distribution.
At the time of the wedding, the defendant, Ms. Olson, owned a townhouse on Ridgefield Drive, Voorheesville, New York. This property was titled solely in her name. It was mortgaged in the original amount of $157,500. On April 9, 1992, Ms. Olson executed a modification and forbearance agreement with Citicorp, apparently as a result of her inability to timely meet her mortgage payments and a subsequent foreclosure action. On the date of the wedding, November 6, 1993, Ms. Olson owed to the mortgagee the sum of $168,716.78 in unpaid principal, interest and penalties. There was no proof of any equity in the property at that time.
Shortly after the marriage ceremony, on or about November 17, 1993, plaintiff paid $168,716.78 of his separate property to the mortgagee to pay off the mortgage obligation owed by Ms. Olson to Citicorp for the Ridgefield Drive property.
Although plaintiff states that he paid off the Ridgefield mortgage upon the promise of defendant to put his name on the deed as co-owner, defendant fervently denied this. Plaintiff alleges that he asked defendant numerous times to change the deed, but defendant always put him off. Not only did defendant not comply with her end of the agreement, she denies ever being asked to transfer title or offering to do so.
Plaintiff has been and still remains a professional employee of General Electric (G.E.), drawing an annual salary of *346 $101,000. He also had income from his investments that brought his yearly income to approximately $125,000. Defendant was and is a real estate broker who has claimed various salaries in the years prior to and during the marriage. There was testimony that her gross income for 1993 was $47,000, but testimony that she grossed in the range of $77,000 in 1994. She attached to her second mortgage application her 1995 income tax forms showing only $7,025 in adjusted gross income.
Subsequent to the commencement of the divorce action, defendant twice applied and received mortgages on the home without the knowledge of her husband. The first mortgage yielded proceeds in the amount of $50,000. The second mortgage was in the amount of $55,000. The mortgage applications were both admitted into evidence at trial, and were accompanied by the testimony of the representative of the mortgage company through which the applications were processed. In testifying about the details of the application process, the representative stated that defendant told her that the purpose of the mortgages was to remove as much cash from the property as possible to hide it from her husband in the upcoming divorce proceedings.
Defendant testified that she had no such intent, and used all of the mortgage monies to pay off various debts and outstanding bills. However, aside from a $25,000 debt to her mother and $17,000 owed to the Internal Revenue Service, defendant could not be precise where the money went.
CONCLUSIONS OF LAW
In the enactment of the "Equitable Distribution” Law, the Legislature recognized that the "marriage relationship is also an economic partnership.” (Majauskas v Majauskas, 61 NY2d 481, 489, citing Governor’s Mem approving L 1980, ch 281, 1980 McKinney’s Session Laws of NY, at 1863.) However, it is also a well-settled principle that "equitable distribution” does not mean "equal” distribution and that the court is granted great discretion in fashioning a remedy to achieve equity upon a consideration of the circumstances of the case, specifically the required factors contained within Domestic Relations Law § 236 (B) (5) (d) (1)-(13). The court is empowered to not only make an equitable disposition of marital property, but also to make a distributive award in lieu of or to supplement or effectuate the distribution of property where authorized and payable in a lump sum or over a period of time. Before the court can distribute the property in question, it must first be *347 categorized as "marital” or "separate”, since separate property is not subject to equitable distribution. (See, Burns v Burns, 193 AD2d 1104.)
It is uncontroverted that the Ridgefield Drive property is solely titled in defendant’s name, and has always been. However, it was not actually acquired until the note and mortgage were satisfied. While the property is legally the separate property of defendant, it is equitably the property of plaintiff.
The case of Nowik v Nowik (228 AD2d 421) is instructive. There, wife brought a home into the marriage as separate property, but husband made contributions of labor and expenditures for the improvement of the property where they resided. The husband, upon divorce, was entitled to a "credit” for the value of his contributions to the property. (Supra.) Here, we have an analogous scenario. Defendant brings separately titled property into the marriage, but property fully encumbered by a mortgage. Plaintiff then pays off the entire mortgage with his own separate property, cash from his Dreyfus fund account.
Plaintiff is clearly entitled to a credit for the expenditure he made to "improve” the property. The stipulated sum of the mortgage buyout, $168,716.78, is the best measure of this improvement and, therefore, the credit owing to plaintiff.
Pursuant to Domestic Relations Law § 236 (B) (5) (g), the court is required to consider the factors contained in subparagraph (d) of that same section, set forth those considered, and the reasons for any decision based thereon. The court finds the following factors to be most significant. The factors are numbered in accordance with subparagraph (d).
1. Plaintiff was making approximately $125,000 per year, both at the time of marriage and at the time of the divorce commencement. Of that figure, $101,000 was salary from G.E. Defendant’s gross income, according to her tax returns, was approximately $77,000 in 1994 and $47,000 in 1993. Plaintiff had additional property in the form of stock, mutual funds, and pension money at the time of the marriage in the approximate amount of $1,000,000.
2. At the time of the commencement of the divorce in October 1994, the parties had been married for slightly less than one year. As of the date of the divorce trial, plaintiff was 51 years old and defendant was 41.
3. Defendant, the custodial mother of a 14-year-old son (date of birth Sept. 27, 1982), Daniel, from a prior marriage, *348 expressed a need to occupy the Ridgefield Drive home at least until the emancipation of her child. Defendant, however, receives $1,500 per month in child support from her former husband, a portion of which is legally considered to be for shelter.
8. Both parties are expected to be fully self-supporting in the future.
11. The court finds that defendant was responsible for the wasteful dissipation of an asset. Specifically, defendant took a piece of property, 21 Ridgefield Drive, that was completely free of encumbrances, and twice mortgaged it in the gross amount of $105,000. Moreover, both mortgages were executed by defendant well after the commencement of the divorce action and well after defendant had retained an attorney. There was evidence that defendant mortgaged the property in order to hide assets from her husband, the plaintiff, but no convincing proof as to where the mortgage proceeds were spent. Therefore, this court can only assume that defendant dissipated the funds or is still possessed of some, if not all, of the proceeds. The fact that defendant executed the mortgage without advising her husband, while not surprising given their tenuous relationship, is indicative of a secretive intent. Her argument that the mortgage payoff was a gift from plaintiff to her is irrelevant, since the statute provision concerns all types of assets owned by either spouse. This court cannot countenance such behavior, even if done ignorantly.
DISTRIBUTION OP ASSETS
Above all else, the wasteful dissipation of the asset that was the home on Ridgefield Drive necessitates the following order. As noted, supra, the Ridgefield house was and remains a separate asset of defendant, as she is the titled owner. However, the plaintiff paid off the entire mortgage on the property, allegedly based upon the parties’ oral understanding. Though this promise remains unfulfilled, plaintiff is not without remedy. Under such circumstances, plaintiff is entitled to a credit in the amount of the improvement, here, the amount of the mortgage payoff. Defendant allegedly has few, if any, assets through which this can be satisfied. She claims that the mortgage proceeds were spent to pay off various debts. Moreover, given the defendant’s general lack of entitlement to the assets of plaintiff, there is little to offset plaintiff’s credit. Should defendant not be able to pay a distributive award to plaintiff in cash, as set forth below, the court will be restricted *349 to the imposition of a constructive trust on and a forced sale of the Ridgefield Drive house. In general, in order to impose a constructive trust, a court requires that four factors be established: (1) a confidential relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment. (Tordai v Tordai, 109 AD2d 996, 997, citing Sharp v Kosmalski, 40 NY2d 119, 121.) These factors are not rigidly applied, but are flexible considerations for the court to apply. (Supra.)
In the case at bar, there is no dispute that the parties were in a confidential relationship at the time of transfer of the money to pay off the mortgage. The court also credits the testimony of plaintiff that a promise to change the deed was made. Even if this were not the case, a promise can be implied by the court where property has been transferred in reliance upon a confidential relationship. (Sharp v Kosmalski, supra, at 122.) Such a promise exists here. Lastly, a more obvious case of unjust enrichment the court cannot imagine. Moreover, the defendant secretly mortgaged the property after the divorce action had started, and cannot even remotely account for the disposition of the proceeds therefrom. Now, defendant seeks the protection of this court, requesting that she be allowed to remain in the house until her child’s emancipation. Given her present income, potential for future income, and defendant’s receipt of $1,500 per month in child support, together with the egregious behavior of defendant, this court holds that defendant’s need to occupy the residence is clearly outweighed by plaintiff’s entitlement to a return of the funds used to pay off the mortgage. While plaintiff is not in need of the money from a financial perspective, the equities of this case demand that defendant not be rewarded for such behavior, her arguments to the contrary notwithstanding. Defendant should easily be able to find suitable shelter for her child and herself in the same school district, if not the neighborhood, without too much difficulty. As Judge Cardozo stated in Beatty v Guggenheim Exploration Co. (225 NY 380, 386), "[a] constructive trust is the formula through which the conscience of equity finds expression.” As a result, a constructive trust is warranted. (See, Ostriker v Ostriker, 203 AD2d 343; Terrille v Terrille, 171 AD2d 906; Tidball v Tidball, 93 AD2d 954; Nager v Nager, 50 AD2d 901.)
In order to return plaintiff to a financial position approximating that which he held prior to the marriage, he is entitled to a return of his improvement to the Ridgefield Drive house, $168,716.78, less the credits due to defendant. After applica *350 tion of the credits, defendant owes to plaintiff the amount of $161,595.06. Plaintiff shall have a judgment in this amount should defendant elect to remain in the house or, if she elects to vacate the house and deed it to plaintiff, in the amount remaining after sale of the house. In the event that defendant elects to remain in the house, defendant is ordered to pay said distributive award within 60 days of service of the judgment by plaintiff upon defendant with notice of entry.
If defendant chooses not to comply with this court’s order with respect to the payment of the distributive award to plaintiff within the time frame set forth herein, it is ordered that defendant convey the property to plaintiff by quitclaim deed, retaining no interest in the property herself. (See, Tordai v Tordai, supra, at 997.) Defendant is ordered to deed the property to plaintiff within 15 days thereafter (i.e., within 75 days).
Should defendant elect to deed the house to plaintiff, plaintiff is then ordered to proceed with the sale of the residence, in order to determine the amended award due him. The amended award is to be determined as follows. Upon sale of the house, the proceeds are to be used to pay off the outstanding mortgage. If the proceeds, after costs, commissions, etc., are sufficient to pay off the mortgage, then plaintiff will be allowed to retain said proceeds, said amount to be deducted from the amount due him from defendant, $161,595.06. However, if the sale price of the home, after costs, commissions, etc., is, for some reason, not sufficient to satisfy the note and mortgage, the difference between the two, plus the costs, commissions, etc., from the sale are to be added on to the distributive award due plaintiff. Such amended distributive award is ordered to be paid by defendant to plaintiff within 60 days of the house sale, and plaintiff shall have an amended judgment for this amount.
[Portions of opinion omitted for purposes of publication.]