[Cite as *Steiner v. Piero-Silagy*, 2017-Ohio-7669.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| VICKI A. STEINER | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ANNE PIERO-SILAGY, ESQ., | : | |
| GUARDIAN OF THE ESTATE | : | |
| OF DELORES A. HOUCHIN | : | Case No. 2017CA00050 |
| UNDER STARK COUNTY PROBATE | : | |
| CASE NO. 224336 | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:　　　　　Appeal from the Court of Common
　　　　　　　　　　　　　　　　　　Pleas, Case No. 2016CV00371

JUDGMENT:　　　　　　　　　　　　Affirmed

DATE OF JUDGMENT:　　　　　　　　September 18, 2017

APPEARANCES:

For Plaintiff-Appellant　　　　　　　　For Defendant-Appellee

JOHN V. BOGGINS　　　　　　　　　JOHN J. RAMBACHER
1428 Market Avenue North　　　　　　MICHAEL J. KAHLENBERG
Canton, OH　44714-2616　　　　　　825 South Main Street
　　　　　　　　　　　　　　　　　　North Canton, OH　44720

*Wise, Earle, J.*

{¶ 1}  Plaintiff-Appellant, Vicki Steiner, appeals the March 27, 2017 judgment entry of the Court of Common Pleas of Stark County, Ohio finding in favor of Defendant-Appellee, Anne Piero-Silagy, Esq., Guardian of the Estate of Delores A. Houchin, on her action in quiet title.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}  In 1985, appellant and her former husband purchased a 12.09 acre parcel of vacant land in Nimishillen Township.  In 1988, they refinanced and constructed a home on the property.  In 1992, the marriage was dissolved and appellant refinanced the property to pay her former husband in exchange for a quitclaim deed for his interest in the property.

{¶ 3}  In 2011, appellant sought to refinance the property and obtain a separate equity line of credit and made application with American First Bancorp, Inc.  American First required a cosigner.  Appellant's mother, Delores Houchin, agreed to cosign.  At the closing on August 16, 2011, American First presented a quitclaim deed to appellant and Ms. Houchin for both of them to sign which they did, placing both of their names on the deed to the property.  The deed was recorded on August 22, 2011.  Appellant and her mother received a loan of $90,000.00 from American First and an equity line of credit loan in the amount of $78,000.00 from U.S. Bank National Association N.D.

{¶ 4}  On February 7, 2013, the Stark County Probate Court found Ms. Houchin incompetent by reason of mental and physical disabilities resulting in impairment and appointed a guardian for her.  On September 1, 2015, the Probate Court appointed

appellee as Ms. Houchin's guardian. Appellee, on behalf of Ms. Houchin, claimed an equity in the property.

{¶ 5} On February 16, 2016, appellant filed an action in quiet title, claiming the quitclaim conveyance was an accommodation only and the parties intended appellant alone remain the equitable and legal owner of the property.

{¶ 6} On November 15, 2016, appellee filed a motion for judgment on the pleadings and/or to dismiss, claiming appellant failed to file requisite title evidence, failed to furnish a summary report of her expert, failed to join necessary and indispensable parties, and failed to state a claim upon which relief can be granted. On December 2, 2016, appellant filed a motion for summary judgment, claiming genuine issues of material fact did not exist. By judgment entry filed December 14, 2016, the trial court denied appellee's motion. By judgment entry filed January 30, 2017, the trial court denied appellant's motion.

{¶ 7} A bench trial was held on March 7, 2017. Findings of fact and conclusions of law were filed on March 22, 2017. By judgment entry filed March 27, 2017, the trial court ruled in favor of appellee, finding appellant did not meet her burden under her quiet title claim.

{¶ 8} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 9} "THE LOWER COURT ERRED AS A MATTER OF LAW IN DENYING THE APPELLANT'S MOTION FOR SUMMARY JUDGMENT, WHERE THE DEFENDANT/APPELLEE, IN HER REPLY TO THE PLAINTIFF'S/APPELLANT'S

MOTION, SUBMITTED NO ADMISSIBLE EVIDENCE IN OPPOSITION TO PLAINTIFF'S/APPELLANT'S EVIDENCE AS REQUIRED BY CIV.R. 56. BECAUSE THE ONLY ADMISSIBLE EVIDENCE BEFORE THE COURT WAS THAT OF THE PLAINTIFF/APPELLANT VICKI STEINER, SHE WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW."

II

{¶ 10} "THE LOWER COURT'S DECISION IS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THE COURT DREW AN IMPROPER INFERENCE THAT DOLORES HOUCHIN EXPECTED TO BE JOINED IN TITLE BECAUSE SHE CONTRIBUTED FINANCIALLY TO HER DAUGHTER VICKI, WHERE THE ONLY EVIDENCE BEFORE THE COURT WAS THAT THERE WAS NO AGREEMENT BETWEEN VICKI STEINER AND HER MOTHER TO CONVEY A ONE-HALF INTEREST IN VICKI'S HOME IN EXCHANGE FOR HER MOTHER'S FINANCIAL ASSISTANCE."

III

{¶ 11} "THE LOWER COURT ERRED AS A MATTER OF LAW BY BASING ITS DECISION UPON THE INFERENCE THAT DOLORES HOUCHIN WISHED TO BE JOINED IN TITLE <u>BECAUSE THERE WAS NO EVIDENCE TO THE CONTRARY</u>, AND UPON THIS INFERENCE THEN CONCLUDING DOLORES WISHED TO BE NAMED CO-GRANTEE IN EXCHANGE FOR PAST AND FUTURE FINANCIAL CONTRIBUTIONS TO HER DAUGHTER VICKI."

{¶ 12} Appellee filed a cross-appeal and assigns the following error:

CROSS-ASSIGNMENT OF ERROR I

{¶ 13} "THE TRIAL COURT ERRED IN DENYING APPELLEE/CROSS-APPELLANT'S MOTION FOR JUDGMENT ON THE PLEADINGS."

I

{¶ 14} In Assignment of Error I, appellant claims the trial court erred in denying her motion for summary judgment. We disagree.

{¶ 15} As stated by the Supreme Court of Ohio in *Continental Insurance Co. v. Whittington,* 71 Ohio St.3d 150, 642 N.E.2d 615 (1994), syllabus: "Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made."

{¶ 16} Based on our review of the record, as further set forth *infra,* we find genuine issues of material fact favoring appellee were presented at trial; therefore, we find the *Continental* holding to be applicable in this case.

{¶ 17} Assignment of Error I is denied.

II, III

{¶ 18} In Assignments of Error II and III, appellant claims the trial court erred in ruling in favor of appellee. We disagree.

{¶ 19} Specifically, appellant argues the trial court abused its discretion, the decision was against the manifest weight of the evidence, and the trial court based its decision on the improper inference that Ms. Houchin intended to be joined in title because there was no evidence to the contrary.

{¶ 20} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 21} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.)

{¶ 22} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman,* 132 Ohio St .3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶ 23} R.C. 5303.01 governs action to quiet title and states the following:

An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest. Such action may be brought also by a person out of possession, having, or claiming to have, an interest in remainder or reversion in real property, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein.

{¶ 24} Appellant's position was that the quitclaim deed was executed at the behest of American First to complete the loan transaction and in no way did the parties intend for Ms. Houchin to have an ownership interest in the property; therefore, appellant is entitled to quiet title. In her March 6, 2017 trial brief at 4, appellant noted the trial court "most certainly has the authority to impose a constructive trust" for her benefit.

{¶ 25} Appellee argues by virtue of the quitclaim deed voluntarily signed by appellant, Ms. Houchin and appellant became tenants in common and Ms. Houchin is a one-half owner of the property under R.C. 5302.19 which states in pertinent part: "if any

interest in real property is conveyed or devised to two or more persons, such persons hold title as tenants in common and the joint interest created is a tenancy in common."

{¶ 26} It is undisputed appellant voluntarily signed the quitclaim deed, adding her mother as a record owner of the property. What is disputed is that appellant was "forced" by American First to sign the deed and it was not the parties' intention to have Ms. Houchin be a one-half owner of the property.

{¶ 27} Appellant testified American First required a cosigner on the refinance and the equity line of credit because her debt to income ratio was too high. T. at 15. Her mother agreed to be the cosigner. T. at 16. During the closing on the loan, American First presented appellant with a quitclaim deed to add Ms. Houchin on the title. T. at 17-18; Plaintiff's Exhibit H. The deed was prepared by Attorney John Wargo from Berea. T. at 18. Appellant did not know this attorney and never had any dealings with him. *Id.* Although appellant testified she wanted to "get up and walk" and she should have, she signed the deed because obtaining the loan cut her house payment nearly in half. T. at 14, 18-19. She felt she did not have any choice but to sign the deed. T. at 24-25. She acknowledged she had gone to another bank, but she thought the closing costs were excessive. T. at 19, 65. Appellant testified at no time was there an understanding between her and her mother that she was giving half of the property to her in exchange for anything she did. T. at 22-23, 66. Appellant never intended that her mother would "be an actual owner of this property and have an interest in it." T. at 25. Appellant was aware of what quitclaim deeds were, as she executed one after her divorce. T. at 11-12, 41; Plaintiff's Exhibit D. Appellant testified she never took any action to remove her mother from the title afterwards because "family chaos ensued and it went to the back

of the burner with my dad." T. at 41-42. She then explained she did attempt to remove her mother from the deed and went to another attorney, accompanied by her sister, but those efforts were unsuccessful because the situation was "this big legal mess." T. at 42-43.

{¶ 28} Unfortunately, due to her incompetence, Ms. Houchin was unable to testify. Appellant did not present any evidence or testimony from anyone from American First that it required Ms. Houchin be placed on the title. T. at 61.

{¶ 29} William Sparks, an attorney called by appellant, testified on cross-examination the deed identified the record owners of the property as appellant and her mother, as tenants in common, giving each party an undivided half interest in the property. T. at 68, 75-76. Mr. Sparks agreed the stated consideration of ten dollars in the deed for the transfer was legally sufficient consideration. T. at 81.

{¶ 30} On cross-examination, appellant admitted that after the appointment of a guardian, she took her mother to the bank and $9,059.50 was withdrawn from Ms. Houchin's account. T. at 52-53, 55. Also, Ms. Houchin helped appellant financially, with appellant receiving monthly payments from her mother pretty consistently between 2008 and 2011 varying from $200.00 to $600.00. T. at 58-60. The deed was executed on August 16, 2011. T. at 17.

{¶ 31} In its findings filed May 22, 2017, the trial court found the following in pertinent part:

6) Steiner claims that American would not grant the loan unless Houchin's name was listed on the title. The loan officers presented Steiner with a quit claim deed with both names as grantees.

7) Steiner testified she was furious, but signed the document anyway, feeling she had no other option.

8) On or about August 16, 2011, Steiner executed a quit claim deed, transferring the record title to the property to herself and also to Houchin as tenants in common.

9) The deed is devoid of any conditions and/or restrictions relating to and/or otherwise encumbering Houchin's ownership interest into the property as tenant in common with Steiner.

11) The mortgage loans are unpaid and outstanding, and the mortgagee securing the mortgage loans are presenting valid, subsisting liens encumbering the record title of Steiner and Houchin to the property. In order to obtain the mortgage loans and benefits therefrom, Steiner needed Houchin to provide good credit and become a co-obligor with Steiner, jointly and severally liable under/upon the mortgage loans.

12) Prior to the deed to Houchin, Steiner had sole, full and complete possession of [the] property.

15) No testimony, nor evidence, was presented as to Houchin's intentions relating to the loan or deed and Houchin is presently incompetent.

17) From August 16, 2011 until the present action, Plaintiff took no steps to remove Houchin from the deed.

{¶ 32} The trial court then concluded the following in part:

From this Court's viewpoint, by virtue of Steiner taking the action of listing her mother Houchin's name on the deed and the conveyance, she has now made Houchin a tenant in common and record holder of the property. Although Steiner feels that she was forced into this decision by American, there was no testimony from American representative that Steiner was required to take this action or was under duress.

Due to the unavailability of Steiner's mother Houchin, there is no testimony that Houchin agreed to be listed on the mortgage and note with her daughter with no expectation of being listed on the deed.

The Court considers the fact that Steiner received thousands of dollars over a three-year period from Houchin, which would indicate to this Court that Houchin may have had a reasonable expectation to be named on the deed in return for the payment that she had been providing to Steiner. Steiner did receive a benefit by Houchin cosigning on the documents. It was Houchin's good credit that convinced American to provide the two loans to Steiner.

The Court cannot equitably divest Houchin of/from Houchin's record interest (as a co-tenant) in the property which, a) Houchin provided and

exposed personal credit for the new mortgage loans; b) Houchin periodically provided personal funds to the Plaintiff and/or Plaintiff unilaterally obtained Houchin's funds for Plaintiff's personal benefit (both before and/or after the date of the deed and new mortgage loans; and c) Houchin cosigned the new mortgage loans (in and of itself constituting consideration for Plaintiff's conveyance to Houchin of an interest in the property), and Houchin became (and remains) jointly and severally liable upon for the new mortgage loans.

Wherefore, since Houchin's name is on the deed and Houchin has now become a tenant in common with equal and co-existing rights, Houchin and/or her Estate are entitled to record title to the property under R.C. 5302 and 5303. The Plaintiff has not met her burden under the quiet title claim. In addition, the Plaintiff has not presented sufficient evidence that would require this Court to impose a constructive trust.

{¶ 33} No testimony or evidence was presented from American First or the attorney who prepared the deed surrounding the circumstances of the deed and substantiating appellant's claim that she was "forced" to sign it. Appellant admitted she could have received financing elsewhere, but the terms were not as favorable compared to what American First was offering. We do not find any evidence to establish that appellant was "forced" to sign the quitclaim deed.

{¶ 34} The gravamen of this case is what did the parties intend in signing the quitclaim deed?

{¶ 35} "The principles of deed construction dictate that a court presumes that a deed expresses the intentions of the grantor and grantee at the time of execution. * * * A court cannot interpret the parties' intent in a manner contrary to the clear, unambiguous language of the deed. * * * " *American Energy Corp. v. Datkuliak,* 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 50 (7th Dist.). (Citations omitted.) What evidence is in the record to rebut this presumption and substantiate appellant's claim of the parties' intentions?

{¶ 36} There is a quitclaim deed with no conditions and/or restrictions relating to Ms. Houchin's ownership interest in the property. The quitclaim deed named appellant and her mother as tenants in common, with each party having an equal interest in the property. Appellant was aware of the effect of a quitclaim deed, and did nothing after the signing to rectify the matter. There was one and one-half years between the signing of the deed and the appointment of a guardian wherein appellant did not attempt to change the deed while her mother was still competent. We do not find any evidence to support appellant's claimed intention that her mother was not to have an equal interest in the property.

{¶ 37} We find the trial court's "inference" (as argued by appellant) regarding monies to appellant from her mother and the conclusion in "(b)" cited above in ¶ 32 not to be relevant or material to the issue.

{¶ 38} As for a constructive trust, appellant "bears the burden of producing clear and convincing evidence justifying it." *University Hospitals of Cleveland, Inc. v. Lynch,* 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, paragraph three of the syllabus. " 'A constructive trust is the formula through which the conscience of equity finds

expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' " *Ferguson v. Owens,* 9 Ohio St.3d 223, 225-226, 459 N.E.2d 1293 (1984), quoting *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919). We do not find any clear and convincing evidence in the record to support the creation of a constructive trust. Ms. Houchin is jointly liable on the note and financially obligated to pay the note in the event appellant defaults on the loans.

{¶ 39} Upon review of the evidence presented, we are unable to conclude that the trial court abused its discretion or created a manifest miscarriage of justice in this case.

{¶ 40} Assignments of Error II and III are denied. Cross-Assignment of Error I is moot.

{¶ 41} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Gwin, J. and

Hoffman, J. concur.


EEW/sg 809